1998 ME 178

## Armand S. MADORE et al.

v.

## MAINE LAND USE REGULATION COMMISSION et al.

Supreme Judicial Court of Maine.

Argued June 9, 1998.
Decided July 17, 1998.

---

1. Contrary to defendant's contention, only one witness made the statement which he assigns as error.

Catherine R. Connors (orally), Helen L. Edmonds, Matthew D. Manahan, Pierce Atwood, Portland, for plaintiffs.

Andrew Ketterer, Attorney General, Jeffrey Pidot, Asst. Atty. Gen. (orally), Augusta, for defendant Land Use Regulation Comm.

Richard A. Spencer, Kaighn Smith, Jr., Drummond, Woodsum & MacMahon, Portland, for intervenor Mooselookmeguntic Improvement Ass'n.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

SAUFLEY, Justice.

[¶ 1] Armand S. and Kathleen G. Madore appeal from the judgment of the Superior Court (Kennebec County, *Alexander, J.*) dismissing their complaint for lack of standing. On appeal, the Madores argue that the court erred in concluding that they lacked standing to litigate their M.R.Civ.P. 80C appeal and federal Fair Housing Act claim, and erred in denying their requests for reconsideration. Finding no error, we affirm the judgment.

[¶ 2] In December 1995, the Madores applied to the Maine Land Use Regulation Commission for approval to develop "Western Maine Academy," a residential education and treatment facility for adolescent male sex offenders, on a parcel of land they owned in Rangeley Plantation. LURC, however, did not act on the application because of questions concerning the environmental suitability of the Madores' land. The Madores then filed a revised application in September 1996 for the same development, to be located on a larger parcel consisting of their original parcel and a contiguous parcel owned by Pamela Lemoine, the Madores' sister-in-law. Because the Madores were required to demonstrate title to the entire development site, they entered into an "Agreement for Sale of Real Estate" with respect to Lemoine's property, dated December 30, 1996, which conditioned the sale in the following manner:

> Buyer's obligation to purchase the property is subject to it being able to obtain all necessary permits from the Maine Land Use Regulation Commission and other State of Maine agencies to construct and operate a school on property and on its adjacent property. If the permits cannot

be obtained within six (6) months from the date hereof, this Agreement will be void.

[¶ 3] Following an adjudicatory hearing on the Madores' application at which LURC received testimony and written comments from the Madores, the public, and intervenor Mooselookmeguntic Improvement Association, LURC concluded that the Madores' proposed facility was primarily a residential treatment center and not a school. Because residential treatment centers are not permitted in residential development subdistricts,[1] LURC denied the Madores' application in a written decision dated June 19, 1997. Accordingly, the Madores' agreement to purchase Lemoine's property then became void by its own terms on June 30, 1997. The Madores did not renew the agreement at that time.

[¶ 4] Notwithstanding the lapse of the agreement, the Madores filed a complaint seeking review of LURC's decision pursuant to 5 M.R.S.A. §§ 11001–11007 (1989) and M.R.Civ.P. 80C and alleging that LURC's decision constituted a violation of the Federal Fair Housing Act, 42 U.S.C. § 3613 (1994).[2] The court consolidated all issues for briefing and oral argument. During the briefing period, counsel for the intervenor inquired whether the Madores had renewed their agreement to purchase Lemoine's property and was told that they had not. The Madores did not renew the agreement in response to that inquiry. When the intervenor filed its brief, it noted the Madores' failure to maintain an interest in the entire development site and suggested that the Madores therefore lacked standing to pursue their complaint. Although the Madores responded to this argument in their reply brief, their response did not address the central issue of their failure to maintain an interest in Lemoine's property. Further, the Madores again failed to secure a renewed interest in the property.

[¶ 5] Following oral argument, the court concluded that the Madores lacked standing

---

1. *See* Me. Land Use Reg. Comm'n Reg. 10.14(D)(3) (Aug. 15, 1991).

2. Although the Madores had not renewed their agreement to purchase Lemoine's parcel, they nonetheless alleged in their complaint that they were the "owners" of the entire development site.

because they had not maintained right, title, or interest in Lemoine's parcel, a property necessary to their proposed development, throughout the existence of the litigation. The court therefore dismissed both counts of the Madores' complaint.[3]

[¶ 6] Immediately after the court rendered its decision, the Madores wrote a letter to the court suggesting the high likelihood that a renewed agreement could be secured and requesting that the court accept it into the record when filed and reconsider its dismissal of the complaint. The Madores then obtained a renewal of the agreement and sent it to the court with another letter requesting the same relief. Treating these letters as motions for reconsideration, the court denied the motions in a more detailed written order of dismissal. This appeal followed.

## I. Justiciability, Mootness, and Standing

[¶ 7] This case involves the application of intertwining concepts of justiciability. "Justiciability requires a real and substantial controversy, admitting of specific relief through a judgment of conclusive character." *Halfway House, Inc. v. City of Portland,* 670 A.2d 1377, 1379 (Me.1996). A justiciable controversy involves a claim of present and fixed rights based upon an existing state of facts. "'Accordingly, rights must be declared upon the existing state of facts and not upon a state of facts that may or may not arise in the future.'" *Campaign for Sensible Transp. v. Maine Turnpike Auth.,* 658 A.2d 213, 215 (Me.1995) (quoting *Connors v. International Harvester Credit Corp.,* 447 A.2d 822, 824 (Me.1982)).

[¶ 8] Standing and mootness are closely related concepts describing conditions of justiciability. To have standing, a party must have a sufficient personal stake in the controversy, at the initiation of the litigation, to seek a judicial resolution of the controversy. *See Halfway House, Inc.,* 670 A.2d at

1379 (citing *Sierra Club v. Morton,* 405 U.S. 727, 731, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)). Mootness, in contrast, has been referred to as "'the doctrine of standing set in a time frame: The requisite personal interest that [existed] at the commencement of litigation (standing) must continue throughout its existence (mootness).'" *Halfway House, Inc.,* 670 A.2d at 1379 (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When,* 82 Yale L.J. 1363, 1384 (1973)). When a party initially holds the requisite personal interest, but is later divested of that interest, the justiciability concept at issue is best described as mootness. A court confronted with a claim of mootness must determine "whether there remain sufficient practical effects flowing from the resolution of the litigation to justify the application of limited judicial resources." *Bureau of Employee Relations v. Maine Labor Relations Bd.,* 655 A.2d 326, 327 (Me.1995).

[¶ 9] Here, the Madores do not dispute the court's findings that they did not hold the requisite interest in Lemoine's property when they filed their complaint, did not renew that interest during the briefing period, and did not hold that interest on the day of the hearing in the Superior Court.[4] At the hearing, the Madores asserted that because they had lost before LURC and might also lose on appeal, they should not be required to expend the funds necessary to renew the agreement to purchase. This argument exposes the flaw in their efforts to proceed without the necessary interest. While it will always be preferable from a financial perspective to determine whether an expenditure is justified by obtaining a court ruling before incurring the expense, such an approach would, in effect, transform the courts into advisory bodies. Hence we have consistently held that a party may not seek judicial (or administrative) action concerning land use without having an interest in the property at issue. *See Halfway House, Inc.,* 670 A.2d at 1379; *Walsh v. City of Brewer,* 315 A.2d 200, 207 (Me.1974). Absent that interest, the applicant does not

---

3. At oral argument, after it had become evident that the court intended to dismiss the complaint, the Madores requested a continuance of one week to obtain a renewed agreement for the purchase of Lemoine's property. Noting that the Madores had been reminded of the agreement's expiration well in advance of oral argument but

had failed to correct the problem, the court denied their request.

4. We are not called upon here to determine whether a brief-but-corrected lapse in such an interest could render a complaint moot.

present an actual controversy to be resolved by judicial action.

[¶ 10] Nonetheless, the Madores argue that their claims were not moot because "sufficient practical effects" existed to justify a decision on the merits where the agreement could easily and quickly be renewed. The court, however, was required to act on the facts before it, and not on an agreement that may or may not be renewed in the future. *See Campaign for Sensible Transp.,* 658 A.2d at 215. Indeed, if the agreement could so readily have been renewed, the Madores could have done so once the intervenor brought the significance of its lapse to their attention. The suggestion that a court should act on the merits of an otherwise nonjusticiable matter because the facts known to the court at the time of its action may change in the future is antithetical to the requirement that courts act only on real controversies before them. To expand the concept of "sufficient practical effects" to include such instances would consistently place courts in the position of providing advisory opinions.

[¶ 11] Accordingly, regardless of whether the issue at bar is framed in terms of standing or mootness, the Madores' Rule 80C appeal did not present a live controversy to the Superior Court either at the time of its filing or on the date of the hearing.[5] The court therefore did not err in concluding that the Rule 80C appeal was not justiciable.

## II. The Fair Housing Act Claim

[¶ 12] The Madores next argue that even if their Rule 80C appeal is nonjusticiable, they have standing to litigate their FHA claim because they are seeking injunctive relief, declaratory relief, and attorney fees pursuant to that claim and therefore need not have a present interest in the property on which they seek to develop housing.

[¶ 13] It is well established, however, that to have standing to seek injunctive and declaratory relief, a party must show that the challenged action constitutes "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (footnote, citations, and internal quotation marks omitted). More specifically, a party raising an FHA claim must show that he has suffered a distinct and palpable injury that is likely to be redressed by a favorable judicial resolution. *See South–Suburban Hous. Ctr. v. Greater South Suburban Bd. of Realtors,* 935 F.2d 868, 878 (7th Cir.1991).

[¶ 14] Here, the Madores did not have title, right, or interest in the full property which they sought to develop. Nor did they raise any other legally protected interest that would warrant either injunctive or declaratory relief. *See, e.g., Halfway House, Inc.,* 670 A.2d at 1381 (finding that Pharos House had standing to challenge constitutionality of City ordinance where its existing business interests were directly affected by the ordinance). The court therefore did not err in dismissing the Madores' FHA claim.

## III. Requests for Reconsideration

[¶ 15] Finally, the Madores argue that the court abused its discretion when it denied their requests to reconsider the dismissal. "Although the Maine Rules of Civil Procedure do not provide specifically for a motion for reconsideration to the Superior Court, we have previously held that such motions should be treated as motions made to alter or amend a judgment pursuant to M.R.Civ.P. 59(e)." *Scott v. Lipman & Katz, P.A.,* 648 A.2d 969, 972 (Me.1994). We have also recognized that a motion for reconsideration can be treated as a motion for relief from judgment pursuant to M.R.Civ.P. 60(b). *See Ocean Nat'l Bank v. Conley,* 670 A.2d 921, 922 (Me.1996); *Palacci v. Palacci,* 613 A.2d 951, 953–54 (Me.1992). In either instance, we review the trial court's action for an abuse of discretion.[6] *See Department of Human Servs. v. Sabattus,* 683 A.2d 170, 171 (Me.1996) (Rule 60); *LeClair v. Commercial Union Ins. Co.,* 679 A.2d 90, 92 (Me.1996) (Rule 59). When the court has correctly

---

**5.** The Madores also argue that even if their claims are moot, they should nonetheless be heard pursuant to two specific exceptions to the rule of mootness, the "sufficient collateral consequences" exception and the "great public con-cern" exception. These exceptions were found inapplicable to the circumstances of *Halfway House* and are equally inapplicable to the circumstances of this case. *See Halfway House, Inc.,* 670 A.2d at 1380.

understood all material factors relevant to the exercise of its discretion, we will not disturb its decision unless the court has made a "serious mistake" in weighing those factors. *See West Point–Pepperell, Inc. v. State Tax Assessor,* 1997 ME 58, ¶ 7, 691 A.2d 1211, 1213 (citing *Coon v. Grenier,* 867 F.2d 73, 78 (1st Cir.1989)).

[¶ 16] The Madores did not invoke either Rule 59 or Rule 60 in their letters to the court. Instead, they argued in essence that they had no notice that "mootness," rather than "standing," would be an issue until they were questioned about mootness by the court. On the basis of this alleged surprise, they urged the court to set aside the dismissal and provide them with additional time to obtain a renewed agreement.

[¶ 17] Justiciability requirements in land use proceedings are not applied in any unique fashion. A litigant must possess a present right, title, or interest in the regulated land which confers lawful power to use that land or control its use when invoking the jurisdiction of the court and throughout any period of appellate review. Without that interest, the controversy becomes nonjusticiable, as there is no possibility of effective relief arising from a judicial resolution of the facts before the court. *See Halfway House, Inc.,* 670 A.2d at 1379. Whether the justiciability issue was framed in terms of standing or mootness, therefore, the Madores had precedential, oral, and written notice that the lapse of their agreement to purchase Lemoine's property affected the justiciability of their claims. Any claim of surprise or newly discovered evidence therefore fails.

[¶ 18] In addition, the Madores argue that the renewal of the agreement was never seriously at risk and that the court should therefore have reopened the record upon proof of that renewal. The Madores believed, apparently throughout the proceedings below, that a renewed agreement could easily be obtained if they succeeded on appeal. Notwithstanding that belief, and although the lapse of the agreement completely divested them of a cognizable interest in the Lemoine property, the Madores went forward without completing that purportedly simple step of renewing the agreement, apparently in an effort to conserve resources. They thus have no factual basis for alleging mistake, inadvertence, or excusable neglect.

[¶ 19] Only after it became clear that the court would rule against them did the Madores take action to renew the agreement. Responding to this action, the court stated that the Madores "cannot be placed on notice of a problem as a matter of law in June of 1997 and as a matter of fact in October of 1997, ignore the problem, wait to see how the court rules and then try to address the apparent legal problem." On this record, we cannot say that the court abused its discretion in denying the Madores' requests for reconsideration.

The entry is:

Judgment affirmed.

---

6. Although we will not disturb the court's decision to treat the correspondence as motions to reconsider, we note that the letters did not comply with the requirements of M.R.Civ.P. 7(b). In light of the absence of authority for the filing of motions for reconsideration in the Superior Court, motions requesting such action should clearly be articulated pursuant to either Rule 59(e) or Rule 60(b).