2004 ME 52

**YORK GOLF AND TENNIS
CLUB et al.**

v.

**TUDOR INSURANCE COMPANY.**

No. Yor–03–481.

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 12, 2003.
Decided: April 9, 2004.

Stephen Wade, Esq., Skelton, Taintor & Abbott, Auburn, for the plaintiff.

Thomas LaPrade, Esq., Lambert Coffin, Portland, for the defendant.

Panel: SAUFLEY, C.J., and RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] York Golf and Tennis Club and its directors appeal from the summary judgment entered by the Superior Court (York County, *Fritzsche, J.*). Although the club was successful in obtaining a declaration that Tudor Insurance Company had a duty to defend it in a lawsuit brought by Francis Reilly, the club and its directors appeal the amount of damages and the denial of attorney fees. Tudor cross-appeals the declaration that it had a duty to defend the club pursuant to its insurance policy. We agree with Tudor that it had no duty to defend, and we vacate the judgment.

## I. BACKGROUND AND PROCEDURE

[¶ 2] York Golf and Tennis Club, a non-profit corporation, purchased a non-profit organization liability insurance policy from Tudor. The policy required Tudor to defend the club and its directors against claims for losses for their wrongful acts.

[¶ 3] A dispute arose from the election of the club's board of directors at its 2000 annual meeting. Francis Reilly and Dana Foster were elected to the board, but the club held a recount, which resulted in the removal of Reilly and Foster from the board of directors. Reilly, Foster, and others filed a complaint with four counts against the club, its directors, and an individual who was not a director. The first and second counts respectively requested preliminary and permanent injunctions requiring the club to seat Reilly and Foster on the board. The third count alleged slander and sought compensatory damages from three of the individual defendants, and the fourth count sought punitive damages for slander from the same three defendants.

[¶ 4] The club presented the complaint to Tudor. It denied coverage, relying on two exclusions in the policy. One exclusion provided that there was no coverage for losses in connection with any claim seeking relief "in any form other than money damages," and the other excluded slander and libel claims.

[¶ 5] The Reilly plaintiffs subsequently filed an amended complaint, which dropped Foster as a plaintiff, added defendants, and added two additional counts. The two new counts, however, sought the same injunctive relief requested in the original complaint, that is, to seat Reilly as a board member. The amended complaint also alleged that relief was available to the Reilly plaintiffs pursuant to 13–A M.R.S.A. § 621 (1981), *repealed by* P.L.2001, ch. 640, § A–1 (effective July 1, 2003), which pertains to judicial review of domestic corporation elections. The two slander counts, although renumbered, remained basically the same as in the original complaint. The club delivered the amended complaint to Tudor and asked it to reconsider its earlier

denial of coverage. The insurer again denied coverage.

[¶ 6] After successfully defending itself in the Reilly action, the club filed the instant suit against Tudor for breach of contract and sought a declaration that Tudor had a duty to defend the club against the Reilly lawsuit and damages for the club's costs of defense. The club also sought to cover its attorney fees in this case. The court granted the club's motion for partial summary judgment and declared that Tudor had a duty to defend the Reilly lawsuit. The court denied the club's request to find that Tudor's duty to defend was clear under Maine precedent and that Tudor was liable for the club's attorney fees in the instant suit.

[¶ 7] The club and Tudor stipulated that the club had incurred costs of $34,719.73 in defense of the Reilly lawsuit, of which $12,719.73 were incurred after Reilly filed the amended complaint. The court issued a judgment for the club against Tudor in the amount of $12,719.73 plus costs and interest.

## II. DUTY TO DEFEND

[¶ 8] We review a summary judgment de novo. *McLaughlin v. Superintending Sch. Comm. of Lincolnville*, 2003 ME 114, ¶ 11, 832 A.2d 782, 785. To determine whether an insurer has a duty to defend, we compare the complaint in the underlying action with the insurance policy. *Found. for Blood Research v. St. Paul Marine & Fire Ins. Co.*, 1999 ME 87, ¶ 4, 730 A.2d 175, 177. The duty to defend arises if there is any potential basis for recovery against the insured and the recovery is an insured risk. *Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350, 1352 (Me.1996). However, we do not speculate about causes of action that were not stated. We recognize that an insurer's duty should not depend on the skill of the drafter of the complaint against the insured.

*Travelers Indem. Co. v. Dingwell*, 414 A.2d 220, 226 (Me.1980). Furthermore, our rules of notice pleading favor a broad construction of the duty to defend. *See Gibson*, 673 A.2d at 1352.

[¶ 9] The policy stated that Tudor would pay all losses arising from a claim against any insured for any wrongful act. It further stated that Tudor "shall have the rights and duty to defend a claim ... seeking damages on account of a Wrongful Act." "Loss" was defined as "money damages, judgments, settlements and Defense Costs." "Wrongful Act" was defined as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission" by any insured or the club itself. The term "insured" included the club's directors and officers. The policy contained a list of exclusions and provided that the insurer was not liable for losses arising out of claims for "libel or slander" or for claims "seeking relief, or redress, in any form other than money damages." The club concedes that Tudor had no duty to defend against the slander counts in the Reilly complaint.

[¶ 10] The Reilly complaint alleged that the actions of the club and its directors were illegal when they conducted a recount of the election of the directors, invalidated the election, and held a new election. It alleged that certain directors of the club acted maliciously in accusing Reilly of tampering with the ballots of the first election and that the directors' accusations were false and slanderous.

[¶ 11] Both the complaint and the amended complaint contained numerous paragraphs alleging facts that pertained to all counts. Each count was set forth separately in several paragraphs; each count had its own prayer for relief; and each prayer was specific in describing the requested relief. All of the requests for relief were for injunctive relief except for

the slander counts, which requested damages against three of the defendants "for their slander."

[¶ 12] Tudor argues that it had no duty to defend the club against the Reilly complaint because the complaint sought injunctive relief and not monetary damages with the exception of the allegation of damages in the slander counts. However, the fact that the complaint itself did not request monetary damages, in its prayers for relief, does not end the matter. A court can grant relief to a plaintiff that is not requested in a complaint if the plaintiff is entitled to the relief and the judgment is not granted by default. M.R. Civ. P. 54(c). Thus, we must look to the allegations in the underlying complaint to determine whether they would support an award of damages even though damages were not requested in the non-slander claims.

[¶ 13] The club argues that there was a potential of monetary damages against it based on the allegations in the Reilly complaint. In its brief to this Court, it suggests three possible bases for damages from the facts set forth in the complaint. First, the club contends that a court could have ordered payment of compensation to Reilly in the amount that he would have received as a director. However, the complaint did not allege that Reilly was deprived of compensation or that he would have been entitled to compensation if he had been seated. The by-laws of the club, which were attached to the complaint, did not state that compensation is paid to directors. The by-laws expressly stated that the officers of the club, who have to be directors, serve without compensation. While the by-laws allowed the directors to appoint an officer or director to an office, for which they can define the duties and fix the compensation, if any, the Reilly complaint did not allege that Reilly was to have been financially compensated if he had been seated on the board of directors or that he lost any compensation as a result of the actions of the club. Therefore, a potential of monetary damages for loss of compensation did not appear from the allegations in the complaint.

[¶ 14] Second, the club suggests that the Reilly complaint stated facts that would potentially allow damages to the plaintiffs in an amount equal to payments that the club might have made to improperly seated directors. The complaint, however, does not suggest that the club paid anything to any of its directors, improperly seated, or otherwise. Furthermore, it is not clear why the plaintiffs would have been entitled to such payments if they had been made. If the club had paid directors who were improperly elected after the second election, those directors might have to pay back any compensation they received to the club, but not to the Reilly plaintiffs.

[¶ 15] Third, the club theorizes that complaint allegations would have entitled Reilly to monetary relief for his communal injury, his personal loss from not being seated on the board, or his damaged livelihood. The term "communal injury" was used in the Reilly complaint in a paragraph that described that Reilly had been a progressive board member during a previous term as a director and that without him the club would lose a voice for progress and innovation. This is the "communal loss" that Reilly, presumably in conjunction with the other plaintiffs, would suffer. The club does not suggest how monetary damages could have been awarded for the communal loss, and we are not willing to speculate on such damages.

[¶ 16] What the club means in suggesting that Reilly would be potentially entitled to damages for his "personal loss" is unclear. The Reilly complaint alleged damages to his reputation and stated that the false and slanderous statements of some of the directors "placed him in jeopardy of

suffering damage relating to his livelihood." Other than the allegations that Reilly's reputation was sullied and the possibility that his livelihood suffered, there are no other allegations of personal loss.

[¶ 17] Thus, we are left with determining whether the allegations regarding Reilly's reputation and livelihood potentially would have entitled Reilly to damages that would not be excluded under the slander or libel exclusion. The essence of slander or libel is a defamatory statement, which is a statement that harms the reputation of the plaintiff. RESTATEMENT (SECOND) OF TORTS § 559 (1977). The Tudor insurance policy covered damages for wrongful acts, which included misleading statements and misstatements. However, insofar as such statements were alleged to have harmed Reilly's livelihood or reputation, the statements were in the nature of slander which is excluded from the policy. There simply was no allegation in the Reilly complaint of other breaches of duty or errors by the club that harmed Reilly's livelihood or reputation. Therefore, we conclude that the Reilly complaint, even broadly construed, did not allege actions by the club that caused monetary damage to Reilly's reputation or livelihood except those allegations that are excluded under the libel and slander exclusion.

[¶ 18] Although the club argues that the reference in the Reilly complaint to 13–A M.R.S.A. § 621 is support for its contention that the complaint presented a potential damages claim, the statutory section is not helpful to it. The statute al-lows any shareholder or director of a domestic corporation to bring an action in the Superior Court "to determine any controversy with respect to an election ... of a director." *Id.* § 621(1). The amended Reilly complaint asserted that the Reilly plaintiffs, pursuant to section 621, were "entitled to relief requested with regard to the election results." Section 621 gives the court the authority to issue various orders concerning elections or reelections. Damages or monetary relief are not mentioned in section 621. If the section is support for monetary relief, it would have to be included in the catchall subsection which allows a court to "[d]irect such other relief as may be just and proper." *Id.* § 621(4)(E). Even assuming that section 621(4)(E) allows a court to award damages in a case brought under section 621, the factual allegations that support the potential of monetary damages must be present.[1] As stated above, the allegations were not present in the Reilly complaint, except to the extent it alleged a slander or libel claim.

The entry is:

Judgment vacated. Case remanded to the Superior Court to enter judgment for Tudor Insurance Company.

---

1.  Even if the Reilly complaint itself had made a request for "such other and further relief as the court may deem just and proper," the request would not be enough to establish a duty to defend. *See Legal Servs. Corp. v. Cont'l Ins. Co.*, No. 93–15326, 1994 U.S.App. LEXIS 35911, at ***9, 15–17 (9th Cir. Sept.16, 1994) (unpublished) (holding no duty to de-fend where underlying complaint sought only injunctive relief and finding language in complaint seeking "further relief as the court deems just and proper" was insufficient; further holding that because damages had not been sought, it would be speculative to rely on whether a court might exercise its power to grant them).