# United States Court of Appeals
## For the First Circuit

No. 09-2040

SCHOOL UNION NO. 37,

Plaintiff, Appellant,

v.

UNITED NATIONAL INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, U.S. District Judge]

Before

Torruella, Circuit Judge,
Souter,* Associate Justice,
and Stahl, Circuit Judge.

Brendan P. Reilly, with whom Jensen Baird Gardner & Henry, was on brief for appellant.
John S. Whitman, with whom Heidi J. Hart and Richardson, Whitman, Large & Badger, were on brief for appellee.

August 19, 2010

---

* The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**TORRUELLA, Circuit Judge.** The dispute in this case involves the scope of coverage afforded by an Educator's Liability Policy.[1]

Plaintiff-Appellant School Union 37 (SU 37)[2] appeals the district court's dismissal on summary judgment of its claim asserting that Defendant-Appellee, United National Insurance Company (United National) had a duty to indemnify SU 37 for the costs incurred in defending a claim for reimbursement of non-tuition expenses under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1490. SU 37 also challenges the dismissal of its claim asserting that United National unreasonably failed to timely settle SU 37's claim for coverage in violation of Maine's Unfair Claims Settlement Practices Act (UCSPA). Me. Rev. Stat. tit. 24-A, § 2436-A(1)(E). For the reasons stated below, we reverse the district court's dismissal of SU 37's claims for coverage under the Policy and affirm the dismissal of SU 37's claim under Maine's UCSPA.

---

[1] An educator's liability policy provides coverage akin to that of professional malpractice insurance. See Bd. of Educ. of Twp. of Union v. N.J. Sch. Bds. Ass'n Ins. Group, 719 A.2d 645, 647 (N.J. Super. Ct. App. Div. 1998).

[2] SU 37 is a school administrative union in Franklin County, Maine that encompasses six school administrative units.

# I. Background and Procedural History

## A. Background

The coverage dispute in this case stems from United National's refusal to indemnify SU 37 for the costs SU 37 incurred in defending an administrative claim for reimbursement of non-tuition expenses paid by DB and Ms. C -- a public school student and his mother -- in a private school placement.

In 2005, Ms. C and DB filed an administrative request for a due process hearing with the Maine Department of Education, claiming that SU 37 had failed to provide free and appropriate education to DB as required by IDEA, 20 U.S.C. § 1400-1482, and by Maine's special education laws, Me. Rev. Stat. tit. 20-A, § 7001 et seq.[3] Because Ms. C and DB filed the administrative claim after DB had completed his schooling and his tuition expenses had been paid, they sought "reimbursement for past room and board and transportation expenses associated with DB's education in private schools outside of Maine." Sch. Union No. 37 v. Ms. C., 518 F.3d 31, 33 (1st Cir. 2008). The claim was submitted to an officer appointed by the Commissioner of Maine's Department of Education, who awarded Ms. C and DB $48,890.00 for room and board and

---

[3] Because Ms. C was a resident of Dallas Plantation, Maine law allowed her to send DB to a school of her choice. Sch. Union No. 37 v. Ms. C., 518 F.3d 31, 33 (1st Cir. 2008) (citing Me. Rev. Stat. Ann. tit. 20-A, §§ 5203.4, 5204.4). From 1999 until 2002, DB was enrolled in three out-of-state private schools. Dallas Plantation paid his tuition expenses but declined to pay room and board and travel expenses.

$3,241.33 for transportation expenses. Id. at 34. SU 37 subsequently filed suit in the United States District Court for the District of Maine challenging the administrative decision. The district court reversed and entered judgment in SU 37's favor. We affirmed that decision on February 26, 2008. Id. at 31. SU 37 incurred and paid litigation expenses in the amount of $73,052.14.

At the time Ms. C and DB filed their claim for reimbursement, SU 37 had purchased an Educator's Liability Policy (the Policy) from United National. During the course of the underlying IDEA-based litigation, SU 37 sought coverage under the Policy for the costs incurred in defending Ms. C's and DB's claim. In two letters dated June 9, 2005 and September 25, 2005, United National informed SU 37 that a claim for reimbursement was not covered under the Policy. United National explained that (1) if IDEA indeed required SU 37 to pay for DB's education expenses, SU 37 would be liable for reimbursement by virtue of its statutory obligation and not as a result of a wrongful act that would trigger coverage under the Policy; and (2) the willful violation of a statute, ordinance or law was excluded from coverage under the Policy.

Under the terms of the Policy, United National -- the insurer -- has the duty to "pay on behalf of the Insureds loss and defense expenses in excess of the stated deductible and up to the stated limit of liability for any claim due to a Wrongful Act to

-4-

which th[e] policy applies." (Emphasis added). The term "claim" is defined as "any written demand for money damages to which th[e] policy applies;" loss is "any amount which the Insureds are legally obligated to pay as damages including back and future pay awards," and a "Wrongful Act" includes "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty by the Educational Entity." (Emphasis added). Relevant to this appeal, the Policy excluded coverage for claims "seeking [relief] other than money damages." (Emphasis added).

## B. Procedural History

After prevailing in the underlying IDEA-based litigation, SU 37 filed suit in the Franklin County Superior Court, claiming that United National had breached the terms of the Policy by refusing to provide coverage for the costs SU 37 incurred in defending Ms. C's and DB's claim for reimbursement. The complaint also included a claim asserting that United National violated its duty to promptly settle the coverage dispute in violation of Maine's UCSPA. Me. Rev. Stat. Ann. tit. 24, § 2436-A(1)(E).

On July 3, 2008, United National removed the action to the United States District Court for the District of Maine. The parties subsequently filed cross-motions for summary judgment on stipulated facts. On March 6, 2009, the magistrate judge recommended that summary judgment be granted in United National's favor. The magistrate concluded that Ms. C and DB had alleged a

"wrongful act" as defined under the Policy, but that the claim for reimbursement under IDEA was not a claim for money damages that could trigger coverage. Finding that there was no coverage for the underlying claim for reimbursement, the magistrate judge concluded that United National had not engaged in an unfair settlement practice under UCSPA.

SU 37 timely objected to the Recommended Decision, but United National did not file any objections. On July 1, 2009, the district court adopted the Recommended Decision and granted United National's motion for summary judgment. SU 37 now appeals that decision.

## II. **Discussion**

We review the district court's grant of summary judgment on cross-motions for summary judgment de novo.[4] Barnes v. Fleet Nat'l Bank N.A., 370 F.3d 164, 170 (1st Cir. 2004). "'Cross-motions [for summary judgment] . . . require us to determine whether either of the parties deserves judgment as a matter of law

---

[4] The parties submitted this case on stipulated facts. Per our decisions in Reich v. John Alden Life Ins. Co., 126 F.3d 1, 7 (1st Cir. 1997), and García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 644 (1st Cir. 2000), we review for clear error any factual inferences drawn by the district court from the facts stipulated by the parties. The parties, however, agreed that the present appeal presents purely legal issues of contract interpretation and they have not argued that any factual inferences should be reviewed for clear error. We therefore abide by the parties' characterization of the applicable standard of review and apply de novo review to the district court's decision.

-6-

on facts that are not disputed.'"  Littlefield v. Acadia Ins. Co.,
392 F.3d 1, 6 (1st Cir. 2004) (quoting Barnes, 370 F.3d at 170).

Where, as here, "the facts upon which liability is
claimed or denied under an insurance policy are undisputed and the
existence or amount of liability depends solely upon a construction
of the policy, the question presented is one of law for the court
to decide."  Atlas Pallet, Inc. v. Gallagher, 725 F.2d 131, 134
(1st Cir. 1984); see also Stop & Shop Cos., Inc. v. Fed. Ins. Co.,
136 F.3d 71, 73 (1st Cir. 1998) ("Construction of insurance
contracts and application of their terms to facts are matters of
law, which we review de novo.").

## A.  Coverage dispute regarding the scope of the term "damages"

The main issue presented in this case is whether a third-
party claim for reimbursement under IDEA is covered under the terms
of the Policy as a claim for "money damages."  The parties disagree
on the proper interpretation of the term "money damages" and they
dispute whether, as a matter of insurance contract interpretation
under Maine law, the term "money damages" includes monetary
compensation that is equitable in nature.

Per our decisions in Nieves-Márquez v. Puerto Rico, 353
F.3d 108, 124 (1st Cir. 2003), and Díaz-Fonseca v. Puerto Rico, 451
F.3d 13, 31 (1st Cir. 2006), it is settled law in this circuit that
"tort-like money damages, as opposed to compensatory equitable

relief, are not available under IDEA."[5]  Nieves-Márquez, 353 F.3d at 124.  This rule stems from the Supreme Court's decision in School Committee of Burlington v. Department of Education of Massachusetts, 471 U.S. 359 (1985).  In Burlington, the Supreme Court held that reimbursement of educational expenses was an available remedy under the Education of the Handicapped Act (EHA), IDEA's predecessor statute, but explained that reimbursement could not be characterized as damages as it "merely requires the [defendant] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper [individualized educational program]."  Id. at 370-71.

Relying on our decisions in Nieves-Márquez and Díaz-Fonseca, United National urges us to hold that a claim for reimbursement under IDEA is not a claim that seeks "money damages" under the Policy.  However, United National's contention is not supported by these precedents.

While it is beyond cavil that tort-like monetary damages are not available under IDEA, the policy reasons that underlie our decisions in Nieves-Márquez and Díaz-Fonseca do not bind our interpretation of the types of claims that may be deemed covered

---

[5]  "IDEA provides that 'a court or a hearing officer may require the agency to reimburse the parents for the cost of [private school] enrollment if the court or hearing officer finds that the agency had not made [Free and Appropriate Education] available to the child in a timely manner prior to that enrollment.'"  Díaz-Fonseca, 451 F.3d at 31 (citing 20 U.S.C. § 1412(a)(10)(C)(ii)).

under a contract of insurance that is entered into by private parties. See Gen. Star Indem. Co. v. Lake Bluff Sch. Dist. No. 65, 819 N.E.2d 784, 793 (Ill. App. Ct. 2004) (stating that because the Supreme Court's decision in Burlington did not "define 'damages' within the context of insurance policies, for which there are well-settled rules of construction," the Court's holding that damages are unavailable under IDEA is "of limited persuasive value" where the key question is whether the term "damages" may be interpreted in the insurance context as encompassing claims for reimbursement).

In Nieves-Márquez and Díaz-Fonseca we examined what Congress meant when it authorized courts to provide monetary compensation in the form of reimbursement for IDEA violations. Because "IDEA's primary purpose is to ensure [free and appropriate education], not to serve as a tort-like mechanism for compensating personal injury," we concluded in Nieves-Márquez that Congress restricted relief under IDEA to reimbursement of tuition expenses and compensatory education. 353 F.3d at 125, 127.[6] Our

---

[6] In Nieves Márquez, the issue of whether a cause of action for damages existed under IDEA was intertwined with whether the state-defendants enjoyed Eleventh Amendment immunity from any claims for money damages. 353 F.3d at 123. Our holding that tort-like damages were not available under IDEA, allowed us to avoid the constitutional issue whether state officers enjoyed Eleventh Amendment immunity. In Díaz-Fonseca, we were called upon to decide whether plaintiffs could recover compensatory and punitive damages in an IDEA claim that plaintiffs had characterized as a section 1983 claim. We reasoned that "if federal policy precludes money damages for IDEA claims, it would be odd for damages to be available under another vehicle." 451 F.3d at 28 (citing Nieves-Márquez, 353 F.3d at 125).

interpretation that tort-like or compensatory damages are not available under IDEA was steeped in policy considerations regarding the type of relief Congress authorized under IDEA, considerations that are not present in an insurance contract dispute. Therefore, these cases do not compel the conclusion that equitable monetary relief in the form of reimbursement cannot be considered relief that seeks "money damages" in the context of an insurance contract. Cf. <u>Chauffeurs, Teamsters & Helpers, Local No. 391</u> v. <u>Terry</u>, 494 U.S. 558, 570 (1990) (explaining, in the context of the Seventh Amendment right to a jury trial, that not "any award of monetary relief must necessarily be legal relief," and characterizing money damages as equitable when they are restitutionary (internal quotation marks and citations omitted)).

The key issue in this case is whether monetary compensation in the form of reimbursement is the type of relief that the parties contracted and bargained for when they subscribed to an Educator's Liability policy. This is an issue of contract interpretation that we address under Maine law.

In support of its contention that a claim for reimbursement is not a claim for "money damages", United National argues that Maine courts draw a distinction between equitable and legal relief, and construe the term "damages" as excluding equitable relief. Advancing an interpretation of the term "damages" that relies on the distinction between equitable and

legal relief, United National relies on Maine's Supreme Judicial Court's decision in Patrons Oxford Mut. Ins. Co. v. Marois, 573 A.2d 16 (Me. 1990). A close examination of Marois reveals, however, that the Supreme Judicial Court did not rely on traditional distinctions between legal and equitable relief in construing the term "damages" in the context of an insurance coverage dispute.

Marois involved the scope of an insurer's liability for the costs undertaken by an insured in complying with an administrative order for restoration of polluted waters. The insureds claimed they were entitled to indemnification under a general liability policy that afforded coverage for "sums which the insured shall become legally obligated to pay as damages because of . . . property damage." Id. at 18. Construing the particular language of the policy, the Supreme Judicial Court concluded that an ordinary insured would not think that the term "as damages . . . because of . . . property damage," included the costs of complying with state-mandated environmental clean-up demands. Id. at 19; see also A. Johnson & Co., Inc. v. Aetna Cas. & Sur. Co., 933 F.2d 66, 69 (1st Cir. 1991) (stating in dicta that, under Maine law, obligation to pay damages because of property damages does not cover administrative or cleanup costs). The Supreme Judicial Court also held that the term "damages" included any amounts that may be awarded against an insured for damage to a third party's property.

_Id._ at 18-19; accord Cent. Me. Power Co. v. Moore, 692 A.2d 943, 946 (Me. 1997).

In Marois, the Supreme Judicial Court referenced a series of state and federal decisions that relied on the distinction between legal compensatory damages and equitable relief to deny coverage as damages for environmental restoration costs. 573 A.2d at 18-19. The Marois decision, however, did not rely on this legal or technical distinction between legal or equitable forms of monetary relief. Instead, because the insureds in Marois had only been found liable for costs attendant to compliance with state-mandated equitable relief, the court found that no liability for damages due to property damage existed. Cf. Barrett Paving Materials Inc. v. Cont'l. Ins. Co., 429 F. Supp. 2d 197, 202 (D. Me. 2006) ("past and future costs associated with remediation of the discharge of pollutants can properly be considered 'damages,' . . . where a private third-party seeks to recover damages resulting from the discharge of pollutants"); see also U.S. Fidelity & Guaranty Co. v. Goodwin, 950 F. Supp. 24 (D. Me. 1996)(same).

Contrary to United National's contention, we have not found any Maine case-law construing the term damages as excluding monetary relief that is equitable in nature. In fact, one decision from the United States District Court for the District of Maine has endorsed an expansive interpretation of the term damages, holding

that an equitable action for accounting of lost profits under the Lanham Act was a claim for "damages" as defined by a commercial general liability policy. Am. Employer's Ins. Co. v. DeLorme Publ'g Co., Inc., 39 F. Supp. 2d 64, 79 (D. Me 1999). Moreover, we have not found any Maine precedent denying coverage where, as here, an insured is liable for payment of equitable monetary relief to a third party.[7]

Under settled principles of insurance contract interpretation in Maine, "[i]nsurance policies are liberally construed in favor of an insured and any ambiguity in the contract is resolved against the insurer." York Ins. Group of Me. v. Van Hall, 704 A.2d 366, 369 (Me. 1997); see also Foremost Ins. Co. v. Levesque, 868 A.2d 244, 246 (Me. 2005). We construe the insurance contract as a whole and according to the intentions of the parties. Found. for Blood Research v. St. Paul Marine & Fire Ins. Co., 730 A.2d 175, 180 (Me. 1999). "An insurance policy is ambiguous only if an ordinary person would not understand that the policy did not cover certain claims." Me. Mut. Fire Ins. Co. v. Grant, 674 A.2d 503, 505 (Me. 1996) (citing Marois, 573 A.2d at 19). In applying

---

[7] Although United National points to at least one Maine decision that declined to find there was a duty to defend where the underlying complaint sought purely injunctive relief and the allegations in the complaint did not support an award of damages or monetary relief, York Golf & Tennis Club v. Tudor Ins. Co., 845 A.2d 1173 (Me. 2004), we are here dealing with a case in which the insured is liable for payment of monetary relief which is intertwined with an injunction. Thus, we are not faced with an insured's liability for the costs of compliance with an injunction.

-13-

these rules of interpretation, the relevant policy language is "viewed from the standpoint of the average ordinary person who is untrained in either the law or the insurance field 'in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured'." Baybutt Const. Corp. v. Comm'l Union Ins. Co., 455 A.2d 914, 921 (Me. 1983) (quoting Brown v. City of Laconia, 386 A.2d 1276, 1277 (N.H. 1978)). Where there is no ambiguity in a term, it is interpreted according to its plain and commonly accepted meaning. Brackett v. Middlesex Ins. Co., 486 A.2d 1188, 1190 (Me. 1985).

Relying on the fact that the Supreme Judicial Court held in Marois that the term "pay as damages because of . . . property damage" unambiguously excluded coverage for environmental restoration costs, United National would have us conclude that, as matter of law, the term "money damages" is unambiguous and should be interpreted as excluding equitable forms of monetary compensation. As already stated, the Supreme Judicial Court in Marois interpreted the term "as damages" in the context of an insurance policy wholly different from the one we are reviewing in the present case. Furthermore, the Supreme Judicial Court did not hold that, in all cases, the term "as damages" is unambiguous as a matter of law. See Levesque, 868 A.2d at 247 (rejecting argument that the terms "loading and unloading" were ambiguous as a matter of law and explaining that the terms, while unambiguous in one

-14-

context, were ambiguous when applied to a different factual scenario). Thus, a finding that the term "as damages" was unambiguous in Marois, does not compel the conclusion that the term "money damages" is unambiguous in this case.

Viewing the Policy as a whole, we find that the term "money damages" is "reasonably susceptible of different interpretations," Cambridge Mut. Fire Ins. Co. v. Vallee, 687 A.2d 956, 957 (1st Cir. 1996), regarding the types of claims that may be properly construed as seeking relief for "money damages." Although the Policy does not define the term "money damages," and therefore does not indicate whether the term extends to equitable forms of monetary compensation, the Policy does refer to equitable forms of monetary compensation when it includes backpay among the types of losses that trigger the insurer's duty to indemnify.[8] See Ramos v. Roche Products, Inc., 936 F.2d 43, 50 (1st Cir. 1991), (characterizing backpay as a form of equitable monetary relief in the context of evaluating plaintiff's right to a jury trial in a Title VII case); see also Terry, 494 U.S. at 572-73 (explaining that back pay is a form of equitable relief when it is restitutionary but holding that backpay sought in an action for

---

[8] The Policy imposes a duty on United National to indemnify the Insureds for "any amount which the Insureds are legally obligated to pay as damages including back and future pay awards", and "defense expenses . . . for any written demand for money damages to which th[e] policy applies due to "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty by the Educational Entity . . . ."

breach of a labor union's duty of fair representation under the National labor Relations Act was legal in nature, rather than equitable). By recognizing that amounts payable as damages due to a loss include at least one form of equitable monetary compensation, the Policy employs the term "damages" in an ambiguous manner. We thus disagree with United National's assertion that in employing the term "money damages" the Policy unambiguously restricts the term to legal compensatory damages.

In light of the fact that the Policy lacks a definition of the term "money damages", and given that in at least one of its relevant provisions the Policy construes "damages" in the context of one form of equitable monetary relief, we find it unlikely that an ordinary insured would interpret damages as excluding monetary compensation in the form of reimbursement. Cf. Found. for Blood Research, 730 A.2d at 180 (holding that an ordinary insured would not interpret the term "belittle" as referring to the archaic tort of belittlement). We therefore decline to limit policy coverage in this case to legal monetary compensation or tort-like monetary damages.

We bear in mind that "a standard policy of insurance . . . being the crafty product of insurers who made the policy, selected its language[,] and ordained its particular structure, should be interpreted most strongly against the insurer." Baybutt Constr. Corp., 455 A.2d at 921. Therefore, we believe that the

-16-

Maine Supreme Judicial Court would construe the term "money damages" as encompassing compensatory equitable relief in the form of reimbursement.  See Aetna Cas. & Sur. Co., Inc. v. Pintlar Corp., 948 F.2d 1507, 1513 (9th Cir. 1991) ("Any definition of damages which is grounded upon the ancient division between law and equity . . . would hardly be an ordinary and accepted meaning in the eyes of a reasonably prudent layperson." (internal quotation marks and citations omitted)).

We add a final clarification.  If United National intended to exclude coverage for IDEA-based claims, it should have done so explicitly by defining the term "money damages" according to the distinction between legal and equitable monetary relief, or by expressly excluding coverage for IDEA claims.[9]  It did not do so, and we decline to construe the Policy to exclude coverage for claims that plainly involve monetary relief that seeks to redress a third party's loss.[10]

---

[9]  As a policy matter, United National claims that a finding of coverage for claims for reimbursement under IDEA would incentivize schools to circumvent their obligations under IDEA in order to place the costs of compliance with IDEA on insurers.  We disagree. As SU 37 aptly explained in its brief and at oral argument, the Policy at issue includes a separate exclusion for any willful violation of a statute, ordinance, or law.

[10]  Because we find that the underlying claim for reimbursement is a claim for "money damages" under the Policy, we need not address SU 37's argument regarding United National's waiver of affirmative defenses to coverage.

-17-

## B.  Existence of a wrongful act

United National claims that even if we hold that a claim for reimbursement under IDEA is a claim for money damages, we should nevertheless find that SU 37 is not entitled to indemnification under the Policy as an alleged failure to provide free and appropriate education under IDEA is not a "claim due to a wrongful act."

In its recommended opinion and order, the Magistrate Judge found, and the district court agreed, that an alleged failure to provide free and appropriate education under IDEA amounted to a wrongful act that would trigger coverage under the Policy. Although the Magistrate's recommended decision advised the parties of their right to file objections to the report, 28 U.S.C. § 636(b)(1), and indicated that a failure to object "constitute[d] waiver of the right to de novo review by the district court and to appeal the district court's order," United National did not file any objections to the Magistrate's conclusion on the existence of a wrongful act.

We have previously held that "only those issues fairly raised by the objections to the magistrate's report are subject to review in the district court and those not preserved by such objection are precluded on appeal." Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988).  Because United National failed to object to the magistrate's recommendation

-18-

regarding the existence of a wrongful act, we deem this argument forfeited and decline to address it. Sands v. Ridefilm Corp., 212 F.3d 657, 663 (1st Cir. 2000) (holding that "failure to object to the ruling of the magistrate judge constituted waiver"). Additionally, "[a] party who neglects to file a cross-appeal may not use his opponent's appeal as a vehicle for attacking a final judgment in an effort to diminish the appealing party's rights thereunder." Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998). United National has not provided an explanation for its failure to file a cross-appeal. We thus find no compelling reason to address an argument that was not properly presented before this court on appeal.

## C. Violation of Maine's UCSPA

SU 37's final argument on appeal is that the district court erred in dismissing its claim for relief under Maine's UCSPA. Me. Rev. Stat. tit. 24-A, § 2436-A(1)(E).

Maine's UCSPA provides that an insured may recover "reasonable attorney's fees and interest on damages at the rate of 1 1/2% per month," if the insurer fails, "[w]ithout just cause . . . to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear." Me. Rev. Stat. tit. 24-A, § 2436-A(1)(E). "[A]n insurer acts without just cause if it refuses to settle claims without a reasonable

basis to contest liability, the amount of any damages or the extent of any injuries claimed." Id. § 2436-A(2).

Because United National ultimately abandoned the defense that the Policy excluded coverage for wilful violations of IDEA, and given that the district court ultimately rejected United National's contention that the underlying IDEA-based suit did not involve a wrongful act as defined by the Policy, SU 37 claims that United National lacked any reasonable basis to deny liability in violation of Maine's UCSPA. We disagree.

We must first clarify that the touchstone of our inquiry under UCSPA is whether the insurer lacked any legitimate or reasonable basis to contest liability. See Rankin v. Allstate Ins. Co., 336 F.3d 8, 16 (1st Cir. 2003) ("We assume that any legitimate doubt [regarding liability] is a safe harbor under UCSPA . . . ."). Thus, the fact that United National was ultimately unsuccessful in pursuing two of its defenses to coverage does not automatically render its actions unreasonable under UCSPA.

Throughout the course of the present coverage dispute, United National denied liability, stating that no claim for "money damages" under the Policy had been made. Given the uncertainty under Maine law regarding the interpretation of the term damages, we find that United National had legitimate and reasonable doubts regarding the scope of its liability for the costs SU 37 incurred in defending the underlying IDEA-based claim for reimbursement.

-20-

Though United National ultimately failed in pursuing two defenses to liability, SU 37 has failed to show that United National lacked any legitimate or reasonable basis to deny coverage. We thus affirm the district court's dismissal of SU 37's claim for relief under UCSPA.

### III. Conclusion

For the reasons stated, the judgment of the district court dismissing SU 37's claim for coverage under the Policy is reversed. The judgment dismissing SU 37's claim under Maine's UCSPA is affirmed.

**Reversed and Affirmed**. **Costs are taxed against United National Insurance Company**.