MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2017 ME 57
Docket:       Cum-16-105
Argued:      December 14, 2016
Decided:     March 28, 2017

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

CITY OF SOUTH PORTLAND et al.

v.

MAINE MUNICIPAL ASSOCIATION PROPERTY & CASUALTY POOL

HUMPHREY, J.

[¶1] The City of South Portland and its Code Enforcement Officer Patricia Doucette appeal from a summary judgment entered in the Superior Court (Cumberland County, *L. Walker, J.*). The court concluded that the Maine Municipal Association Property & Casualty Pool had no duty to defend the City of South Portland and Doucette in a federal lawsuit challenging an ordinance. We agree that the Pool had no duty to defend, not because, as the court concluded, the complaint requested only nonmonetary relief, but rather because any potential damages would be excluded from coverage. We accordingly affirm the judgment.

## I. BACKGROUND

[¶2]  The following facts, developed in the summary judgment record, are undisputed.  *See N. E. Ins. Co. v. Young*, 2011 ME 89, ¶ 5, 26 A.3d 794.

[¶3]  On July 21, 2014, the City Council of South Portland enacted Ordinance #1-14/15.  The Ordinance prohibits the bulk loading of crude oil on marine tank vessels in South Portland.  On February 6, 2015, the Portland Pipeline Corporation and American Waterways Operators (PPLC) filed suit against the City of South Portland and Doucette in the United States District Court for the District of Maine.  The suit challenged the legality of the Ordinance, arguing that the Ordinance was unconstitutional, preempted by state and federal law, and otherwise beyond the legislative authority of the municipality.  The complaint and prayer for relief requested declaratory and injunctive relief and attorney fees pursuant to 42 U.S.C.S. § 1988 (LEXIS through Pub. L. No 115-9).  In Count VII, PPLC alleged that the Ordinance "deprives [PPLC] of [its] rights secured by the United States Constitution . . . under color of state law, thereby violating 42 U.S.C. § 1983."  PPLC further alleged in Count VII that it is "suffering and will suffer irreparable harm as a result of being deprived of [its] Constitutional rights and [is] entitled to

declaratory and injunctive relief against the City and Doucette in her official capacity."

[¶4]  The Maine Municipal Association Property & Casualty Pool is a public self-funded pool established pursuant to 30-A M.R.S. §§ 2251-2256 (2016).  The Pool provides liability coverage to the City of South Portland and its public officials pursuant to a Coverage Certificate.  The City notified the Pool of the PPLC lawsuit, tendered the complaint, and requested a defense, which the Pool declined to provide.[1]  The City has therefore funded its own defense in the PPLC litigation.

[¶5] Agreement H of the Coverage Certificate provides that the Pool will "pay those sums which the Member shall be obligated to pay by reason of liability imposed upon the Member by law for damages, direct or consequential, as defined by the term 'Ultimate Net Loss' on account of any 'Wrongful Act' of the Member."  Included within the definition of "Wrongful Act" is a "violation of civil rights protected under 42 U.S.C. § 1981 *et seq.* committed by a Member . . . solely in the course of duties or activities for or on behalf of the Named Member."  Excluded from the definition of "Ultimate Net Loss" are "punitive or exemplary damages . . . or injunctive, non-monetary or

---

[1]  Unless otherwise noted, this opinion refers to the City of South Portland and Doucette collectively as "the City."

4

restitutionary relief." There is an additional exclusion for "any claim or 'suit' seeking injunctive or non-pecuniary relief." "Suit" is defined as "[a] civil proceeding in which damages because of 'bodily injury,' 'property damage,' 'personal injury,' 'advertising injury,' or 'wrongful acts' to which this Certificate applies are alleged." Exclusion C, titled the "TAKING AND OTHER GOVERNMENTAL CONDUCT AFFECTING LAND AND PROPERTY RIGHTS AND INTERESTS EXCLUSION," provides:

> This Certificate does not cover, and does not apply to, any loss, damage, injury, claim, "suit" or liability directly or indirectly (1) caused or occasioned by, happening through, because or in consequence of, resulting from, arising out of or in any way connected with the operation of the principles of eminent domain, condemnation, inverse condemnation, adverse possession, prescription, dedication by adverse use, or any other similar principle, by whatever name called; or (2) caused or occasioned by, happening through, because or in consequence of, resulting from, arising out of, in any way connected with, or constituting an impairment of title, diminution of value, loss of value, inability to realize or obtain full value, diminution of use, loss of use, or inability to realize or obtain full use, of land or any property right or property interest therein, allegedly or actually caused by or resulting from governmental action, omission or conduct of any nature, by whatever name called. This exclusion applies whether or not any such loss, damage, injury, claim, "suit," or liability is asserted against any Member directly or by virtue of because of any agreement entered into by or on behalf of any Member.

[¶6] On May 8, 2015, the City brought the present action in the Superior Court (Cumberland County). The amended complaint alleged a breach of the

duty to defend. The City moved for summary judgment on September 4, 2015, and the Pool moved for summary judgment on October 20, 2015. The court (*L. Walker, J.*) denied the City's motion and granted the Pool's motion by written order. The court concluded that the Pool had no duty to defend because the complaint, as drafted, requested only declaratory and injunctive relief, not damages, and therefore there was no potential that the City could be liable for damages within the scope of coverage. The City timely appealed.

## II. DISCUSSION

[¶7] Whether an insurer[2] owes a duty to defend is a question of law that we review de novo. *See York Ins. Grp. v. Lambert*, 1999 ME 173, ¶ 4, 740 A.2d 984. If the material facts are not in dispute, we "review the summary judgment for errors of law, including errors in the interpretation of the insurance policy." *Harlor v. Amica Mut. Ins. Co.*, 2016 ME 161, ¶ 7, 150 A.3d 793. We compare the insurance policy with the complaint against the insured, reading the documents broadly, to determine whether there is

---

[2] Although the Pool argues that it is not an insurer, we join several other jurisdictions that have treated similar risk pools as insurers for the purposes of analyzing coverage issues. *See Wash. Hous. Auth. v. N.C. Hous. Auths. Risk Retention Pool*, 502 S.E.2d 626, 629 (N.C. Ct. App. 1998) ("[W]e hold that policies or coverage documents issued by risk pools such as defendant to their members are subject to the same standard rules of construction as traditional insurance policies issued by insurance companies to their customers."); *Ohio Gov't Risk Mgmt. Plan v. Cty. Risk Sharing Auth.*, 719 N.E.2d 992, 996 (Ohio Ct. App. 1998) (analogizing risk pool to insurance); *S.D. Pub. Entity Pool for Liab. v. Winger*, 566 N.W.2d 125, 128 n.5 (S.D. 1997) (applying same general principles to risk pools as to insurance policies because coverage concepts are similar).

"any legal or factual basis that could potentially be developed at trial and result in an award of damages covered by the terms of the policy." *Id.* ¶ 8. A factual allegation in the complaint that would give rise to damages may not trigger the duty to defend if the allegations fall within an applicable exclusion. *See York Golf & Tennis Club v. Tudor Ins. Co.*, 2004 ME 52, ¶¶ 17-18, 845 A.2d 1173. The insurer has the burden to establish that an exclusion applies. *See Patrons Oxford Ins. Co. v. Harris*, 2006 ME 72, ¶ 19 n.6, 905 A.2d 819.

[¶8] The City concedes that the only *claim* alleged in the complaint that could give rise to damages triggering the Pool's duty to defend is Count VII—a claim pursuant to 42 U.S.C.S. § 1983 (LEXIS through Pub. L. No. 115-9). Agreement H of the Coverage Certificate expressly provides coverage for an "Ultimate Net Loss," which includes a "Wrongful Act," which in turn includes an action pursuant to section 1983 alleging a civil rights violation. The City further concedes that the only *allegation* in the complaint that provides a factual basis for an award of damages is paragraph 25. Paragraph 25 alleges that the Ordinance "immediately and currently reduces the current market value of PPLC's pipelines and hinders its ability to engage in interstate and international commerce."[3] Compensatory lost-profits damages are an

---

[3] The City reiterated at oral argument that lost profits is the factual basis in the complaint that could give rise to damages that it contends triggered the Pool's duty to defend.

available remedy for a section 1983 claim. *See Carey v. Piphus*, 435 U.S. 247, 255-57 (1978) (stating that Congress intended to permit compensatory damages for section 1983 violations as a deterrent).

[¶9] Assuming, however, that the section 1983 claim could give rise to the potential for an award of money damages that would otherwise trigger the Pool's duty to defend, those damages would fall squarely within one of several applicable exclusions in the Coverage Certificate.

[¶10] In paragraph 25, PPLC alleges that the Ordinance has caused it damage by impairing the use and value of a property right: namely, that the Ordinance leaves PPLC unable to realize full use of its pipelines to generate profits, resulting in decreased market value of the property. Any damages awarded pursuant to paragraph 25 would therefore be entirely encompassed within Exclusion C, which excludes, in relevant part, "any loss, damage, injury, claim, 'suit,' or liability" that is

> caused or occasioned by, happening through, because or in consequence of, resulting from, arising out of, in any way connected with, or constituting an impairment of title, diminution of value, loss of value, inability to realize or obtain full value, diminution of use, loss of use, or inability to realize or obtain full use, of land or any property right or property interest therein, allegedly or actually caused by or resulting from governmental action, omission or conduct of any nature, by whatever name called.

Paragraph 25 would therefore not trigger the Pool's duty to defend.

[¶11]  The City emphasizes other claims in the complaint that allege constitutional violations for which it argues nominal damages, outside Exclusion C, would be available pursuant to the section 1983 claim alleged in Count VII.[4]  *See Farrar v. Hobby*, 506 U.S. 103, 112-13 (1992) (concluding that nominal damages are available to section 1983 litigants); *see also Baker v. Farrand*, 2011 ME 91, ¶ 11 n.3, 26 A.3d 806 ("Nominal damages are recoverable for a violation of a plaintiff's legal right—that is, an 'injury'—when that injury is not accompanied by actual loss or harm, or when the extent of the loss or harm is not proven.").

[¶12]  Nominal damages, however, awarded pursuant to Count VII if PPLC prevailed on one or more of its claims seeking declaratory and injunctive relief alleging that the Ordinance violates its constitutional rights, would similarly fall within Exclusion C and would therefore not trigger the duty to defend.  PPLC would have no standing to bring those constitutional claims in federal court without a threshold showing that the Ordinance

---

[4]  The City focuses entirely on Count VII in arguing that the complaint gives rise to potential damages.  Standing alone, Counts I-VI and VIII-IX would not give rise to an award of damages because those counts bring claims that would entitle PPLC only to injunctive, declaratory, and otherwise nonmonetary relief.  Those counts would not trigger the duty to defend because claims for injunctive and nonmonetary relief are not only excluded from the definition of "Ultimate Net Loss," but are also subject to a separate exclusion from coverage.

impinges upon PPLC's rights in a way that distinguishes it from members of the general public. *See Madore v. Me. Land Use Regulation Comm'n*, 1998 ME 178, ¶ 13, 715 A.2d 157 ("It is well established . . . that to have standing to seek injunctive and declaratory relief, a party must show that the challenged action constitutes 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))).   PPLC's challenge to the constitutionality of the Ordinance turns entirely upon the alleged impairment of PPLC's property rights in the pipeline; without this showing, PPLC would lack standing to bring those claims. *See, e.g., Madore*, 1998 ME 178, ¶ 13, 715 A.2d 157. Exclusion C would thus preclude any potential award of nominal damages to vindicate the alleged constitutional violations for the same reasons that any damages pursuant to paragraph 25 would be excluded from coverage.   Ultimately, the very injury that gets PPLC through the courthouse door nullifies, pursuant to Exclusion C, any duty on the part of the Pool to defend the suit.

[¶13]   We conclude that the Pool has no duty to defend the City because any potential damages for which the City would be liable in the federal suit would be excluded from coverage pursuant to the terms of the Coverage

Certificate. *See York Golf*, 2004 ME 52, ¶¶ 17-18, 845 A.2d 1173 (concluding that the only factual basis alleged in the complaint that could support a damage award was subject to an applicable exclusion and there was therefore no duty to defend). Because the complaint could not give rise to damages within the scope of coverage, the Pool had no duty to defend the City.[5] The Pool was entitled to a summary judgment.

The entry is:

Judgment affirmed.

---

Roy T. Pierce, Esq., (orally) and Sally J. Daggett, Esq., Jensen Baird Gardner & Henry, Portland, for appellants City of South Portland and Patricia Doucette

James M. Bowie, Esq., (orally) and Hillary J. Bouchard, Esq., Thompson & Bowie, LLP, Portland, for appellee Maine Municipal Association Property & Casualty Pool

Cumberland County Superior Court docket number CV-2015-196
FOR CLERK REFERENCE ONLY

---

[5] We affirm the judgment on this ground and need not address the trial court's conclusion that a complaint artfully drafted to specifically request only non-monetary relief can foreclose the potential for an award of damages that would otherwise trigger the duty to defend. *See York Golf & Tennis Club v. Tudor Ins. Co.*, 2004 ME 52, ¶ 8, 845 A.2d 1173; *Travelers Indem. Co. v. Dingwell*, 414 A.2d 220, 226 (Me. 1980).