**Christina Marie STRATTON**

v.

**Michael J. ASTRUE, Commissioner, Social Security Administration.**

**Civil No. 11–cv–256–PB.**

United States District Court, D. New Hampshire.

May 18, 2012.

Jeffry A. Schapira, Schapira Professional Association, Manchester, NH, for Christina Stratton.

Gretchen Leah Witt, U.S. Attorney's Office, Concord, NH, for Michael J. Astrue, Commissioner, Social Security Administration.

### ORDER

PAUL BARBADORO, District Judge.

I herewith approve the Report and Recommendation of Magistrate Judge Landya B. McCafferty dated May 11, 2012, no objection having been filed. " '[O]nly those issues fairly raised by the objections to the magistrate's report are subject to review in the district court and those not preserved by such objection are precluded on appeal.' " *School Union No. 37 v. United Nat'l Ins. Co.*, 617 F.3d 554, 564 (1st Cir.2010) (*quoting Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir.1988)); *see also United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986) (after proper notice, failure to file a specific objection to magistrate's report will waive the right to appeal).

SO ORDERED.

### *REPORT AND RECOMMENDATION*

LANDYA McCAFFERTY, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Christina Stratton moves to reverse the Commissioner's decision denying her application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382. The Commissioner, in turn, moves for an order affirming his decision. For the reasons that follow, I recommend that the matter be remanded to the Commissioner for further proceedings consistent with this report and recommendation.

### Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive
>
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); *see also* 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions). However, the court "must uphold a denial of social security ... benefits unless 'the [Commissioner] has committed a legal or factual error in· evaluating a

particular claim.'" *Manso–Pizarro v. Sec'y of HHS,* 76 F.3d 15, 16 (1st Cir.1996) (quoting *Sullivan v. Hudson,* 490 U.S. 877, 885, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." *Alexandrou v. Sullivan,* 764 F.Supp. 916, 917–18 (S.D.N.Y.1991) (citing *Levine v. Gardner,* 360 F.2d 727, 730 (2d Cir.1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Currier v. Sec'y of HEW,* 612 F.2d 594, 597 (1st Cir.1980) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). But, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." *Irlanda Ortiz v. Sec'y of HHS,* 955 F.2d 765, 769 (1st Cir.1991) (citations omitted). Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Tsarelka v. Sec'y of HHS,* 842 F.2d 529, 535 (1st Cir.1988). Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[ ] the evidence in the record as a whole." *Irlanda Ortiz,* 955 F.2d at 769 (quoting *Rodriguez v. Sec'y of HHS,* 647 F.2d 218, 222 (1st Cir.1981)).

## Background

The parties have submitted a Joint Statement of Material Facts, document no. 13. That statement is part of the court's record and will be summarized here, rather than repeated in full.

Stratton was born in 1989. She has two young children, both of whom she is raising with assistance from her mother and a friend. She has relatively little work experience, but was employed as a housekeeper, both in private homes and in a hotel, until September 1, 2007, her alleged onset date.

Stratton has suffered from asthma since she was about six years old, and experienced exacerbations of that condition in 2005, 2006, and 2007. Since her alleged onset, Straton's asthma has been treated with a nebulizer, an inhaler, and various medications including Prednisone, Doxycycline, Albuterol, Advair, and steroids. She has also been diagnosed with depression, anxiety, and possible panic attacks. Her mental condition has been treated with counseling and several medications, including Celexa, Ativan, and Zoloft.

Based on both the pattern of her treatment and her own testimony, it seems that for both asthma and anxiety, Stratton's health-care provider of choice is the emergency room, *see* Administrative Transcript ("Tr.") 32–33, which she has visited frequently.[1] The record also suggests that Stratton's asthma and her anxiety symptoms tend to converge. On several occasions she reported to the emergency room thinking that her shortness of breath was related to her asthma only to find that it was more likely to be a symptom of anxiety. *See, e.g.,* Tr. 259, 275. She has fre-

---

1. In April of 2009, Stratton telephoned or visited: (1) the Catholic Medical Center emergency room three times (Apr. 3, 10, and 20); (2) what appears to be an urgent-care unit at Dartmouth–Hitchcock six times (Apr. 14, 20, 21, 23, 28, and 29); and (3) the Elliot Hospital emergency room four times (Apr. 11, 19, 20, and 23).

quently reported shortness of breath as one of the symptoms of her anxiety. *See, e.g.,* Tr. 270, 273, 301, 341, 414, 417, 420. Finally, in a May 5, 2009, note documenting a telephone conversation with Stratton's mental-health counselor, Jan Paquette, Dartmouth–Hitchcock's Dorice Reitchel reported:

> [C]hristina has articulated to [Paquette] that a family relative died having [an] asthma attack.
>
> [S]he therefore shows up in ed [er?], so that if she gets [an] attack, or [one] worsens, she'll be safe.
>
> [O]riginally, [J]an thought the anxiety was about the birth, but [it] seems to be about fear of [a] deadly asthma attack.

Tr. 284.

The record includes no medical opinions concerning Stratton's physical capacity for work. It does, however, include a Physical Residual Functional Capacity ("RFC") Assessment, *see* Tr. 156–63, completed by DDS Disability Examiner Joanne Degnan in her capacity as a "single decisionmaker" (or "SDM").[2] Tr. 163. Degnan concluded her RFC assessment with the following comments:

> Claimant has history of moderate asthma, controlled on albuterol and advair. In 4/07 she was admitted for asthma exacerbation. She had exacerbation in 11/07 while pregnant. Consult indicated this was partially attributed to bronchi-

tis. She was also noted to possibly have seasonal/environmental allergies. She was given oral prednisone and released as improved.

> 8/08 there was exacerbation. Hx noted never having been intubated. Also noted last exacerbation had been only one within last year. She had recently been treated for cold by PCP. Dx is asthma with bronchitis, given nebulizer tx.—antibiotic and robitussion. 3/29/09 seen in ER for similar sx; given duoneb and sent home as improved—at this time she was 15 weeks pregnant. She was having SOB while picking up her toddler. MD notes some of her asthma symptoms may be attributed to anxiety, stress of being overwhelmed with pregnancy and child care. Her asthma was stable as of 4/1/09. Chest xray 4/11/09 was negative. Finally seen 5/12/09 for acute back pain related to fall in bathroom. No further treatment other than by midwife according to claimant through 7/12/09.

> PFTs were done in 5/07 and again in 6/08—both of these were read as normal and no significant response to bronchodilator.

> . . . .

> She has MDIs, not at listing level; she should function as shown in Section 1.[3]

Tr. 163. The record also includes two Disability Determination and Transmittal

---

**2.** Magistrate Judge Cohen has explained what the term "single decisionmaker" means:

> At oral argument, counsel for the commissioner clarified that the term "SDM" stands for "Single Decision Maker" and that SDM Crutcher was a Social Security Administration employee with no medical credentials. Counsel explained that, as part of an experiment initiated in New Hampshire and Maine to expedite processing of applications, SDMs have been rendering initial decisions, with a medical expert (such as Dr. Johnson in this case) being consulted only

upon reconsideration, if any. Counsel agreed with the proposition that, for purposes of review by this court, a decision by a non-medical SDM such as Crutcher is entitled to no weight.

*Goupil v. Barnhart,* No. 03–34–P–H, 2003 WL 22466164, at *2 n. 3 (D.Me. Oct. 31, 2003). The SDM decision in Goupil concerned the claimant's RFC. *See id.*

**3.** Section 1 described a capacity for light work with several postural and environmental limitations.

forms, both signed by Degnan. *See* Tr. 52, 54.

In August of 2009, at the request of the Social Security Administration, Dr. Lorene Sipes performed a psychological consultive examination of Stratton, and completed a Mental Health Evaluation Report on her. *See* Tr. 530–34. Dr. Sipes reported her opinions that Stratton had: (1) some limitations in the area of activities of daily living, but generally functioned well; (2) a limited ability in the area social functioning, but was not precluded from functioning in that area; (3) some limitations in the area of understanding and remembering instructions, but generally functioned well; (4) no limitations or minimal limitations in the area of concentration and task completion; and (5) some limitations in the area of reaction to stress and adaptation to work or work-like situations, but still functioned satisfactorily. Dr. Sipes diagnosed Stratton with panic disorder with agoraphobia and gave the following prognosis: "Stratton reported symptoms of panic disorder which research has demonstrated to be effectively treatable. She reportedly takes medication as prescribed and attends therapeutic services on an irregular basis. Thus, it is my clinical opinion that her prognosis is fair." Tr. 533. Dr. Sipes concluded with the following recommendations:

Stratton provided a coherent history and was able to effectively articulate sufficient [illegible] information to render a diagnosis and suggest effective treatment strategies. Thus, her symptom presentation does not suggest the need for further assessment/testing. She

would likely benefit from medication management and individual therapy. Tr. 534.

In August of 2009, state-agency consultant Dr. Edward Martin completed a Psychiatric Review Technique form on Stratton in which he took into account anxiety-related disorders. *See* Tr. 536–49. Specifically, he identified panic disorder with agoraphobia as "[a] medically determinable impairment [that was] present that [did] not precisely satisfy the diagnostic criteria" for anxiety-related disorders. Tr. 541. As for functional limitations, Dr. Martin found mild limitations in Stratton's abilities in the area of activities of daily living and moderate limitations in two other areas: (1) maintaining social functioning; and (2) maintaining concentration, persistence, and pace. He determined that Stratton had no extended episodes of decompensation.

At the time he completed the Psychiatric Review Technique, Dr. Martin also completed a Mental RFC Assessment on Stratton. *See* Tr. 550–53. In the summary conclusion section of the form he filled out, Dr. Martin indicated moderate limitations in four of the twenty listed functional abilities [4] and no significant limitations in the remaining sixteen. He then gave the following assessment:

This is a 20 year old female alleging severe anxiety; AOD 9/1/07, DLI 6/30/09, DI/DIB claim. She further states she does not like to be around large groups of people. There is no treatment of anxiety until around 4/1/09; therefore, there is insufficient evidence to support AOD; MOD is set at 4/1/09 at the onset of her treatment. Given the

---

4. Specifically, Dr. Martin found Stratton to be moderately limited in her abilities to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) work in coordination with or proximity to others without being distracted by them; and (4) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *See* Tr. 550–51.

absence of on-going treatment, any impairments can be expected to last 12 months.

She was seen for intake only at Greater Manchester Mental Health Center, and did not return. There is mention in primary care records of treatment of anxiety and panic attacks with zoloft and ativan, beginning in 4/09 with good response. To provide AMS and information on function, she is seen by Lorene Sipes, Ph.D. (Consultative Examiner), on 8/20/09. Her opinions are given weight; supporting evidence mentioned above is consistent with findings of exam; claimant's statements are found partially credible.

Despite impairments, the claimant is able to understand, remember, and carry out short and simple instructions but not more detailed ones; special supervision is not needed. She is able to concentrate on these types of instructions for 2 hour periods. She is able to ask questions and request assistance. In a work setting with minimal public/coworker contact, she can get along with coworkers and supervisors, respond appropriately to supervisory criticism, and respond to changes in the simple work setting. Under these conditions she can complete a full work day and week without interruptions from psychologically based symptoms.

Tr. 552.

At the hearing on Stratton's claim, her counsel stated his belief that "the records that we do have indicate that the claimant does meet the asthma listing, 3.03–B." Tr. 39 In addition, the ALJ took testimony from a vocational expert ("VE"), to whom he posed a hypothetical question incorporating: (1) a requirement that Stratton needed to avoid concentrated exposure to respiratory irritants; and (2) the limitations stated in Dr. Martin's Mental RFC Assessment. The VE testified that a person with such limitations could perform Stratton's former work as a house cleaner, as well as several other jobs.

After hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

3. The claimant has the following severe impairments: Asthma and anxiety (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

. . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant must avoid exposure to respiratory irritants. The claimant is able to understand, remember and carry out short and simple instructions but not more detailed ones. Special supervision is not needed. She is able to concentrate on these types of instructions for 2–hour periods. She is able to ask questions and request assistance. In a work setting with minimal contact with the public and coworkers, the claimant can get along with coworkers and supervisors, respond appropriately to supervisory criticism, and respond to changes in the simple work setting. Under these conditions, the claimant can complete a full workday and week without interruptions from psychologically based symptoms.

. . . .

6. The claimant has no past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

. . . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 10, 11, 15, 16. Based on the testimony of the VE, the ALJ determined that Stratton had the capacity to work as a groundskeeper (unskilled medium work), as a chambermaid (unskilled light work), as an office helper (unskilled light work), as an office mail clerk (unskilled light work), as a plastic-hospital-products assembler (unskilled light work), and as an eyeglass assembler (unskilled sedentary work).

### Discussion

According to Stratton, the ALJ's decision should be reversed, and the case remanded, because the ALJ: (1) failed to determine whether her asthma met or equaled a listed impairment; (2) failed to properly assess the credibility of her statements about the symptoms of her impairments; and (3) made an RFC assessment that was not supported by substantial evidence.

#### A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a).

The only question in this case is whether Stratton was under a disability.

For the purpose of determining eligibility for disability insurance benefits,

[t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (setting out a similar definition of disability for determining eligibility for SSI benefits). Moreover,

[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); *see also* 42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard for determining eligibility for SSI benefits).

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process. *See* 20 C.F.R. §§ 404.1520(DIB) and 416.920(SSI).

The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe

impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey v. Barnhart,* 276 F.3d 1, 5 (1st Cir.2001) (citing 20 C.F.R. § 416.920).

■■■■ The claimant bears the burden of proving that she is disabled. *See Bowen v. Yuckert,* 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). She must do so by a preponderance of the evidence. *See Mandziej v. Chater,* 944 F.Supp. 121, 129 (D.N.H.1996) (citing ·*Paone v. Schweiker,* 530 F.Supp. 808, 810–11 (D.Mass.1982)). Finally,

> [i]n assessing a disability claim, the [Commissioner] considers objective and subjective factors, including:
>
> (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the [claimant] or other witness; and (3) the [claimant]'s educational background, age, and work experience.

*Mandziej,* 944 F.Supp. at 129 (citing *Avery v. Sec'y of HHS,* 797 F.2d 19, 23 (1st Cir.1986); *Goodermote v. Sec'y of HHS,* 690 F.2d 5, 6 (1st Cir.1982)).

### B.   Stratton's Arguments

To restate, Stratton argues that the ALJ's decision should be reversed, and the case remanded, because the ALJ: (1) failed to determine whether her asthma met or equaled a listed impairment; (2) failed to properly assess the credibility of her statements about the symptoms of her impairments; and (3) made an RFC assessment that was not supported by substantial evidence. Stratton's first argument is persuasive, and dispositive.

In the heading of her first argument, Stratton contends that the "[t]he ALJ erred when he failed to determine whether [her] asthma met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 which is the third step of the mandatory sequential evaluation process." Cl.'s Mem. of Law (doc. no. 12–1), at 3. That is not an entirely accurate interpretation of the ALJ's decision, which includes his statement that he "reviewed the records with particular attention to Listing 3.03 and Listing 12.06," Tr. 10, and his determination "that the claimant does not have impairments that meet or equal the requirements of any section of Appendix 1," *id.* Thus, the ALJ *did* determine that Stratton's asthma did not meet or equal Listing 3.03.

In the body of her argument, Stratton shifts gears. Rather than contending that the ALJ failed to make a determination about whether her asthma met or equaled a listing, she points out, correctly, that while the ALJ did make the required determination, he did not support it with any analysis or discussion.[5] She then characterizes that oversight as reversible error, and offers a preemptive refutation of any argument by the Commissioner that the ALJ's error was harmless. She also argues that the ALJ erred by making a step-three determination that was not supported by any expert-opinion evidence, in

---

5.  That is in sharp contrast with his determination that Stratton's anxiety did not meet or equal Listing 12.06, which he supported with a page-long discussion that included multiple references to Dr. Sipes's Mental Health Evaluation Report. *See* Tr. 10–11.

violation of Social Security Ruling ("SSR") 96–6p, 1996 WL 374180 (S.S.A.1996). The court addresses each argument below, after making a preliminary observation about the circumstances of this case and setting out the legal principles that govern step-three determinations.

### 1. Prelude

Before analyzing the arguments before it, the court pauses to observe that this is an unusual case, and not only because it involves a relatively rare challenge to an ALJ's step-three determination. Specifically, the court notes: (1) the confluence of the presentation and symptoms of Stratton's physical and mental impairments, discussed above; (2) the fact that most of Stratton's treating sources are emergency-room physicians, rather than office-based primary-care providers, which diminishes the availability of traditional treating-source medical opinions; and (3) the Commissioner's utilization of the "single decisionmaker model" in this case, *see* 20 C.F.R. §§ 404.906(b)(2) and 416.1406(b)(2). Use of the "single decisionmaker model," in turn, has resulted in both: (1) the absence of an opinion from a state-agency physician on the issue of medical equivalence (an issue at step three); and (2) the lack of a Physical RFC Assessment from a state-agency physician.

### 2. Legal Principles

"[I]t is the claimant's burden to show that he has an impairment or impairments which meets or equals a listed impairment in Appendix 1." *Torres v. Sec'y of HHS*, 870 F.2d 742, 745 (1st Cir.1989) (citing *Dudley v. Sec'y of HHS*, 816 F.2d 792, 793 (1st Cir.1987)). An "impairment(s) is medically equivalent to a listed impairment ... if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a) and 416.926(a). The regulations go on to describe how the Commissioner determines

equivalence when a claimant has: (1) an impairment described in 20 C.F.R. Part 404, Subpart P, Appendix 1; (2) an impairment that is not described in Appendix 1; or (3) a combination of impairments. *See* 20 C.F.R. §§ 404.1526(b)(1)-(3) and 416.926(b)(1)-(3). In addition, "[d]eterminations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques." *Phelps v. Astrue*, No. 10–cv–240–SM, 2011 WL 2669637, at *4 (D.N.H. July 7, 2011) (citing 20 C.F.R. § 404.1526(b); *Mace v. Astrue*, Civ. No. 08–14–BW, 2008 WL 4876857, at *1 (D.Me. Nov. 11, 2008)).

### a. Inadequate Analysis

■ Stratton first argues that while the ALJ explained his determination that her anxiety did not meet Listing 12.06, he failed to do so with respect to her asthma and Listing 3.03. The Commissioner offers no particular defense of the ALJ's truncated discussion of Stratton's asthma at step three. He does, however, contend that Stratton has not adequately developed her argument. And, in reliance on *Phelps*, the Commissioner contends that the ALJ's lack of explanation is a harmless error, because his step-three determination is supported by substantial evidence including both Degnan's SDM determination and various pieces of medical evidence the ALJ cited in his decision.

At issue here is whether Stratton's asthma, alone or in combination with anxiety, meets or equals the following listing:

*Asthma.* With:

. . . .

B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for

control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 3.03B.

At her hearing, Stratton put the ALJ on notice that she believed her asthma met Listing 3.03. And, as the ALJ noted in his decision, albeit in the context of his RFC assessment, Stratton alleged that she had visited the hospital six times between August of 2009 and March of 2010 for treatment of her asthma.[6] That allegation speaks directly to the requirements of Listing 3.03B. Yet, in his decision, the ALJ's discussion of equivalence, *vis á vis* asthma, is limited to this:

> The Disability Determination Service (DDS) determined that the claimant's impairments do not meet the criteria of any of the listed impairments. No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. The undersigned has reviewed the records with particular attention to Listing 3.03 [asthma] and Listing 12.06 [anxiety-related disorders] and finds that the claimant does not have impairments that meet or equal the requirements of any section of Appendix 1.

Tr. 10. As the court has noted, the ALJ devoted a full page to discussing non-equivalence to Listing 12.06, but said nothing more about Listing 3.03, and at no point compared the information in the records he reviewed with the specific requirements of the asthma listing. That is a problem.

■ "At step three of the sequential process, the ALJ is generally required to elaborate as to which disability Listings he considered in the process, and state reasons why Petitioner's claim did not meet or equal the contemplated Listing." *Zahm v. Astrue*, No. CV 08–176–LMB, 2010 WL 3515912, at *9 (D.Idaho Aug. 31, 2010). "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not" meet or equal a listed impairment. *Durbin v. Astrue*, No. C11–935–TSZJPD, 2011 WL 5877462, at *11 (W.D.Wash. Nov. 4, 2011) (quoting *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir.2001); citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.1990)). As Judge Castillo recently explained:

> In this case, the ALJ's entire step three analysis related to Plaintiff's hepatitis C states only that "[t]he claimant's hepatitis C does not meet or medically equal the criteria of listing under 5.0 chronic liver disease as there is no indication, nor does the claimant allege, the severity of his hepatitis C is sufficient to satisfy the requirements of the listing." The Court concludes that this cursory statement does not fulfill the requirements that must be satisfied in order for the ALJ's decision to be based on "substantial evidence." While the ALJ identified the listing relevant to Plaintiff's hepatitis C by name, she referenced no

---

**6.** In *Ollila v. Astrue,* the court declined to consider the claimant's step-three argument because "Plaintiff has not indicated which listing(s) she believes that she meets or equals, and has not cited any evidence in the record ... in support of her bare allegation that she meets a listing," Civ. No. 09–3394 (JNE/AJB), 2011 WL 589037, at *11 (D.Minn. Jan. 13, 2011). Here, by contrast, Stratton specifically identified Listing 3.03B, which requires six asthma attacks within a calendar year, and cites, as supporting evidence, the hospital records documenting her numerous hospital visits for asthma and/or anxiety, many of which include complaints of shortness of breath. That is enough to overcome the Commissioner's argument that Stratton has not adequately developed her step-three argument.

expert opinion and the single-sentence explanation does not meet the "more than perfunctory" requirement of *Barnett [v. Barnhart,* 381 F.3d 664, 668 (7th Cir.2004) ("In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing.") ]. *Cirelli v. Astrue,* 751 F.Supp.2d 991, 1003 (N.D.Ill.2010) (citation to the record omitted).

As to what would constitute an adequate determination, Magistrate Judge Imbrogno's analysis in *Davenport v. Astrue* is instructive:

> [T]he ALJ did not err in finding Plaintiff did not meet or medically equal a Listing under Sections 1.04, 14.00, and 11.00. His step three findings discuss in detail the requirements of each Listing and reference specific evidence in the record to support his step three determination.

No. CV–09–0287–CI, 2011 WL 839280, at *4 (E.D.Wash. Mar. 7, 2011) (citations to the record omitted). Judge Brimmer's order in *McCaffrey v. Astrue* provides a specific example of an adequate step-three discussion:

> Contrary to plaintiff's argument, the ALJ provided specific and detailed findings at step three. The ALJ found that plaintiff's impairments did not meet or equal Listing 1.04 because there was no evidence of "spinal arachnoiditis, nor ... evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limited motion of the spine, motor, sensory or reflex loss." The ALJ further found that there was no established medically acceptable imaging finding that plaintiff had "lumbar spinal stenosis resulting in pseudoclaudication." Additionally, objective clinical findings revealed "no significant focal strength or sensory deficits of the lower

extremities," and no consistently positive straight-leg test findings in both the "sitting and supine positions."

No. 10–cv–01943–PAB, 2011 WL 4536980, at *6 (D.Colo. Sept. 30, 2011) (citations to the record omitted). Here, the ALJ did not even mention the requirements of Listing 3.03, much less adduce evidence from the record to support his determination that Stratton's asthma did not meet or equal that listing.

Rather, the ALJ's consideration of Listing 3.03 has much more in common with the step-three determination found to be deficient by Magistrate Judge Hillman in *Fiske v. Astrue:*

> While the burden is on the Plaintiff at this step to put forth evidence of an impairment, the ALJ must provide some analysis of that evidence in making the Listing determination in order for there to be meaningful review and consideration of the findings.

The Court recognizes that the failure of the ALJ to make specific findings as to whether a claimant's impairment meets the requirements of a listed impairment is an insufficient reason solely for setting aside an administrative finding. *See Senne v. Apfel,* 198 F.3d 1065, 1067 (8th Cir.1999); *see also Scheck v. Barnhart,* 357 F.3d 697, 701 (7th Cir. 2004) ("It was unnecessary for the ALJ to articulate her reasons for accepting the state agency physicians' determination [that the claimant met the listing].").  Rather, the focus must be on whether there exists substantial evidence in the decision as a whole for the step three determination. *See Reyes Robles v. Finch,* 409 F.2d 84, 86 (1st Cir. 1969); *cf. Rivera v. Barnhart,* Civ. Act. No. 04–30131–KPN (March 14, 2005) (where Plaintiff failed to prove that his impairments met the severity require-

ments for the particular listing where substantial evidence was shown).

Taking a broad approach, and considering the decision as a whole, *cf. Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir.1985) (refusing to require an ALJ to lay out his determinations and supporting reasoning in a "conclusion" section, as opposed to a "discussion" section, and calling any such requirement a "needless formality"), I find no analysis of the evidence or any factual findings or comparative language that discusses how the Plaintiff's treatments, tests or episodes are different—or less severe—than that which is considered in the Listing for asthma. Without such a basis, I am unable to ascertain on this record whether the ALJ's finding that the Plaintiff's asthma condition did not meet the Listing requirements for a respiratory listing level impairment was supported by substantial evidence. It is, therefore, beyond judicial review, *see Clifton v. Chater*, 79 F.3d 1007 (10th Cir.1996) and must be remanded so that the ALJ can more fully develop the record in greater detail with regard to the requirements of Listing 3.00.

Civ. Action No. 10–40059–TSH, 2012 WL 1065480, at *9–10 (D.Mass. Mar. 27, 2012); *see also Freeman v. Astrue*, No. CV–10–0328–CI, 2012 WL 384838, at *4 (E.D.Wash. Feb. 6, 2012) ("Here, the ALJ's conclusory finding at step three that 'evaluation of the medical evidence does not support that the claimant meets the criteria set forth by the listings as stated in 20 C.F.R. Part 404, Subpart P, Appendix 1,' is insufficient to show that he considered Plaintiff's articulated theory of equivalence.") (citation to the record omitted).

As in *Fiske*, the ALJ's decision included "no analysis of the evidence or any factual findings or comparative language that dis-

cusses how the Plaintiff's treatments, tests or episodes are different—or less severe—than that which is considered in the Listing for asthma." 2012 WL 1065480, at *10. Such a lack of analysis may be harmless where the record includes opinions on the question of equivalence from medical sources. *See, e.g., Phelps*, 2011 WL 2669637, at *5 (holding that "the state agency physician's opinion that claimant was not disabled constitutes probative evidence of a lack of equivalence") (citing *Jones v. Astrue*, No. 3:08–cv–00224, 2009 WL 2827942, at *11–13 (S.D.Ohio Sept. 1, 2009)); *Crenshaw v. Astrue*, No. 3:09CV00041, 2010 WL 2292136, at *2–3 (W.D.Va. Apr. 22, 2010). But, as to Stratton's asthma (either alone or in combination with her anxiety), there is no medical opinion on equivalence in the record, only the determination by Degnan, a non-physician DDS disability examiner. The Commissioner tries to save the ALJ's decision by quoting a paragraph from his credibility assessment that discusses some of the medical evidence. That could be viewed as an impermissible post hoc rationale. *See Larlee v. Astrue*, 694 F.Supp.2d 80, 84 (D.Mass.2010); *see also Lane v. Astrue*, No. 1:10–CV–28 JD, 2011 WL 3348095, at *10 (N.D.Ind. Aug. 3, 2011) (citations omitted). But even if the court were to consider the portion of the ALJ's decision quoted by the Commissioner, it does not track Listing 3.03 closely enough to carry the day. *See Fiske*, 2012 WL 1065480, at *10. In sum, Stratton is entitled to a remand so that the ALJ can conduct a proper step-three determination.

### b. Lack of Expert–Opinion Evidence

While the ALJ's failure to provide an adequate explanation of his step-three determination, alone, warrants a remand, the court will also discuss the second part of Stratton's step-three argument, as it raises issues that are likely to come up on re-

mand. The second part of Stratton's argument is that the ALJ violated the requirements of SSR 96–6p by rendering a step-three determination that was not supported by expert-opinion evidence.

Specifically, she argues that because "[n]o physician in the record has opined whether or not [she] met or equaled a listed impairment or a combination of listed impairments which, in this instance, would be a combination of the listings of 3.03 and 12.06 ... the ALJ usurp[ed] the role of a medical professional by finding no medical equivalence." Cl.'s Mem. of Law (doc. no. 12–1), at 5. In Stratton's view, the ALJ's "failure to obtain an updated medical expert opinion regarding medical equivalency violate[d] the requirements of SSR 96–6p." *Id.* Thus, she argues that "the ALJ in regard to his Step 3 analysis should not have ignored the asthma listing at 3.03 but rather should have called upon the services of a medical expert to advise as to whether or not the claimant's impairments from asthma and/or anxiety disorders, individually or in combination, met or equaled the severity of a listed impairment." Cl.'s Mem. of Law (doc. no. 12–1), at 7.

The Commissioner rejects Stratton's "SSR 96–6p argument [as being] based solely on a technical error,"[7] *id.* at 8, that has no legal consequence due to Stratton's failure to demonstrate prejudice. According to the Commissioner, Stratton is obligated to demonstrate prejudice because Social Security Rulings do not have the force of law. He also points out that the decision as to whether to call for additional evidence from a medical advisor is left to the discretion of the ALJ. Finally, he asks the court to extend the ruling in *Phelps*, that a "state agency physician's opinion

that the claimant was not disabled constitutes probative evidence of a lack of equivalence," 2011 WL 2669637, at *5 (citation omitted), to cover opinion evidence from DDS decisionmakers.

SSR 96–6p describes the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge ... is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, *longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge ... must be received into the record as expert opinion evidence and given appropriate weight.*

1996 WL 374180, at *3 (emphasis added); *see also Barnett,* 381 F.3d at 670 ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 404.1526(b)); *Retka v. Comm'r of Soc. Sec.,* 70 F.3d 1272 (unpublished table decision), 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)); *Modjewski v. Astrue,* No. 11–C–8, 2011 WL 4841091, at *1 (E.D.Wis. Oct. 12, 2011) (warning that an ALJ who

---

7. While the Commissioner concedes that the ALJ erred, he does not further identify the

"technical error" he concedes.

makes a step-three equivalence determination without expert-opinion evidence runs the risk of impermissibly playing doctor).

SSR 96–60 treats equivalence determinations differently from determinations that an impairment meets a listing, requiring expert-opinion evidence for the former but not the latter. Judge Ellison explains why:

> The basic principle behind SSR 96–6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments *meet* the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are *equivalent* to the Listings. *See Frank* [*v. Barnhart* ], 455 F.Supp.2d [554,] 558 & n. 3 [ (E.D.Tex.2006) ]. This is presumably because making an equivalency finding requires difficult medical judgments as to the severity of a claimant's ailments, judgments that are greatly assisted by consulting an expert.

*Galloway v. Astrue,* Civ. Action No. H–07–01646, 2008 WL 8053508, at *5 (S.D.Tex. May 23, 2008).

The expert-opinion evidence required by SSR 96–6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA–831–U5 (Disability Determination and Transmittal Form)." SSR 96–6p, 1996 WL 374180, at *3; *see also Field v. Barnhart,* No. 05–100–P–S, 2006 WL 549305, at *3 (D.Me. Mar. 6, 2006) ("The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D. ... discharging the commissioner's basic duty to obtain medical-expert advice concerning the Listings question.").

In addition to noting the "longstanding policy" requiring expert-opinion evidence on the issue of equivalence, SSR 96–6p also describes the circumstances under which an ALJ is required to obtain an updated medical opinion:

> [A]n administrative law judge ... must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> * When no additional medical evidence is received, but in the opinion of the administrative law judge ... the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> * When additional medical evidence is received that in the opinion of the administrative law judge ... may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.
>
> When an updated medical judgment as to medical equivalence is required at the administrative law judge level in either of the circumstances above, the administrative law judge must call on a medical expert.

*1996 WL 374180,* at *3–4 (footnote omitted).

Magistrate Judge Griffin has observed that "[t]he wording of the ... section[s] of SSR 96–6p [quoted above are] convoluted and ... can be easily misinterpreted." *Lyke v. Astrue,* No. 3:08–0510, 2011 WL 2601435, at *15 (M.D.Tenn. Apr. 25, 2011). Still, it is evident that SSR 96–6p does two different things; it requires record evidence in the form of an expert opinion as the basis for a determination of equivalence in the first instance, and then it identifies two circumstances under which those medical opinions must be updated. *See Lyke v. Astrue,* No. 3:08–cv–0510, 2011 WL 2601429, at *6 (E.D.Tenn. June 30, 2011) (pointing out the distinction between the evidentiary requirement of the longstanding policy and the limited circum-

stances under which the opinion required by the longstanding policy must be updated).

At first blush, Stratton's reliance on the update provision rather than the longstanding policy seems somewhat misplaced, given that the record in this case includes no expert opinion on equivalence that could be updated. But, the case law on SSR 96–6p helps explain Stratton's strategy. In *Elliott ex rel. Elliott v. Astrue*, the Commissioner argued that the ALJ satisfied the longstanding policy by basing his step-three determination on several SSA 832–U5 forms that were included in the record, *see* No. 10–cv–01548–WYD, 2011 WL 4485907, at *5 (D.Colo. Sept. 28, 2011). After noting various deficiencies in those forms, which rendered them legally insufficient to satisfy the longstanding policy, *see id.* at *5–6, Judge Daniel ruled that under the circumstances, *i.e.*, the lack of adequate expert-opinion evidence on equivalence, the ALJ abused his discretion by failing to obtain evidence from a medical expert, *see id.* at *6. In *Sox v. Astrue*, where the ALJ's decision "made no reference to any document in the record in which a state agency physician addressed whether plaintiff's alleged impairments equal[ed] a listing," Civ. Action No. 6:09–1609–KFM, 2010 WL 2746718, at *11 (D.S.C. July 2, 2010), Magistrate Judge McDonald remanded the case and "instructed [the ALJ] to obtain a medical expert opinion on the issue of equivalence," *id.; see also Caine v. Astrue*, No. C09–450–JCC–BAT, 2010 WL 2102826, at *8 (W.D.Wash. Apr. 14, 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none was in the record); *Wadsworth v. Astrue*, No. 1:07–CV–0832–DFH–TAB, 2008 WL 2857326, at *7 (S.D.Ind. July 21, 2008) (holding that where record included no expert-opinion evidence on equivalence, "[t]he ALJ erred in not seeking the opinion of a medical

advisor as to whether Mr. Wadsworth's impairments equaled a listing"). The lesson of *Elliott, Sox, Caine*, and *Wadsworth* would appear to be that the lack of expert-opinion evidence sufficient to satisfy the longstanding policy described in SSR 96–7p is yet another situation that triggers an ALJ's obligation to obtain a medical opinion.

All other things being equal, the court would have no difficulty concluding that this case should be remanded due to the lack of expert-opinion evidence on the question of equivalence. *See, e.g., Barnett*, 381 F.3d at 670; *Retka*, 1995 WL 697215, at *2; *Carbajal v. Astrue*, No. 10–cv–02025–PAB, 2011 WL 2600984, at *3 (D.Colo. June 29, 2011) (reversing and remanding where record contained Disability Determination and Transmittal form not signed by physician, Physical RFC Assessment by non-physician disability examiner, but no "opinion from a medical source on the issue of equivalence"); *Galloway*, 2008 WL 8053508, at *5 (holding that where medical opinion in the record made "no findings about whether Plaintiff's impairments [met] or equal[ed] the Listings" the ALJ "violated the requirements of SSR–96–6p [and] violated [his] duty to develop the record" by failing to obtain expert-opinion evidence on equivalence); *Berrios–Vasquez v. Massanari*, No. CIV. A. 00–CV–2713, 2001 WL 868666, at *8 (E.D.Pa. May 10, 2001) (remanding when "ALJ made the [step-three equivalence] determination without the benefit of the required opinion by a designated consultant"); *but see Copenhaver v. Astrue*, No. A–09–CA–838–SS, 2011 WL 891617, at *9 (W.D.Tex. Mar. 11, 2011) ("The opinion of a medical expert is not, as Copenhaver suggests, a mandatory part of the Commissioner's [step-three] analysis.").

There is, however, one wrinkle. As noted, the record includes a Physical RFC

Assessment in which DDS Disability Examiner Joanne Degnan, in her capacity as a single decisionmaker, stated that Stratton had medically determinable impairments "not at listing level." [8]  Tr. 166.  In *Oakes v. Barnhart,* the ALJ relied on an equivalence determination by a SDM, *see* 400 F.Supp.2d 766, 774 (E.D.Pa.2005), and the Magistrate Judge recommended "that the matter be remanded for the taking of medical evidence on the subject of whether the combination of her impairments equal[ed] a listed impairment," *id.* at 768.  Judge O'Neill did not adopt that portion of the Report and Recommendation, ruling that the single-decisionmaker model, described in 20 C.F.R. § 404.906(b) [9] and currently utilized in New Hampshire, *see Goupil v. Barnhart,* No. 03–34–P–H, 2003 WL 22466164, at *2 n. 3 (D.Me. Oct. 31, 2003), "altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence," 400 F.Supp.2d at 776.  Specifically, Judge

O'Neill concluded that "under [20 C.F.R. § 404.906] an ALJ is fully competent to make the disability determination and is not required to consult a medical expert in the medical equivalency determination, but rather should seek a medical consultation when appropriate." *Id.* at 777.  *Oakes,* in other words, supports the Commissioner's suggestion that the holding in *Phelps* could be extended to allow Degnan's opinion to count as substantial evidence for the ALJ step-three determination of non-equivalence.

Judge O'Neill's decision in *Oakes,* however, seems to stand alone.  Several subsequent decisions from other courts, while not citing *Oakes,* have held that opinions such as the one rendered by Degnan in this case do not satisfy the expert-opinion-evidence requirement stated in SSR 96–6p.  For example, in *Williams v. Astrue,* Magistrate Judge Hayes ruled that the "ALJ failed to comply with Social Security Ruling 96–6p" when he or she based a deter-

---

8.  Degnan's statement would be much more useful if it did not lump together two separate questions, *i.e.,* whether Stratton's impairments met a listing and whether those impairments equaled a listing.  *See Galloway,* 2008 WL 8053508, at *5 (noting the evidentiary differences between meeting and equaling an impairment); *Freeman,* 2012 WL 384838, at *5 (explaining that ALJ's finding that an impairment does not meet a listing does not establish lack of equivalence); *Shook v. Barnhart,* Civ. Action No. 05–4107–JAR, 2006 WL 4080050, at *6 (D.Kan. Aug. 21, 2006) (requiring ALJ to make separate findings on both questions, *i.e.,* whether an impairment meets a listing and whether it equals one).

9.  The relevant regulations describe the single-decisionmaker model in the following way:

In the single decisionmaker model, the decisionmaker will make the disability determination and may also determine whether the other conditions for entitlement to benefits based on disability are met.  The decisionmaker will make the disability determination after any appropriate consultation with a medical or psychological consultant.  The medical or psychologi-

cal consultant will not be required to sign the disability determination forms we use to have the State agency certify the determination of disability to us (see § 404.1615).  However, before an initial determination is made that a claimant is not disabled in any case where there is evidence which indicates the existence of a mental impairment, the decisionmaker will make every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment pursuant to our existing procedures (see § 404.1617).  In some instances the decisionmaker may be the disability claim manager described in paragraph (b)(1) of this section.  When the decisionmaker is a State agency employee, a team of individuals that includes a Federal employee will determine whether the other conditions for entitlement to benefits are met.

20 C.F.R. § 404.906(b)(2); *see also* 20 C.F.R. § 416.1406(b)(2) (same).

mination of non-equivalence on a Disability Determination and Transmittal Form signed by a disability examiner rather than a state-agency medical consultant, Civ. Action No. 07–13451, 2008 WL 4401368, at *4 (W.D.La. Sept. 24, 2008). It is not clear, however, whether the disability examiner in *Williams,* was also a single decision-maker.

Colorado, however, like New Hampshire, is one of the states participating in the SDM pilot program, *see Velasquez v. Astrue,* No. 06–CV–02538–REB, 2008 WL 791950, at *3 n. 4 (D.Colo. Mar. 20, 2011) (remanding where ALJ based RFC assessment on the opinion of a SDM), and in two different cases from the District of Colorado, judges have remanded when ALJs based their step-three determinations on the opinions of SDMs. In *Carbajal,* Judge Brimmer remanded for a proper step-three determination when the ALJ based his or her determination of non-equivalence on a Disability Determination and Transmittal form that was not signed by a physician and a Physical RFC Assessment completed by a disability examiner, *see* 2011 WL 2600984, at *3. In *Elliott,* Judge Daniel ruled that a SSA 832–U5 form in the record "did not constitute a medical opinion on the issue of functional equivalence," 2011 WL 4485907, at *5, because it "was signed by a single decision maker ... who [was] not a medical professional and whose opinion is thus not entitled to weight," *id.* (citing *Klobas v. Astrue,* No. 08–cv–02324–REB, 2010 WL 383141, at *5 (D.Colo. Jan. 29, 2010); *Cunningham v. Astrue,* No. 09–CV–2535–SAC, 2010 WL 4737795, at *4 (D.Kan. Nov. 16, 2010)).

Based on the apparent difference of opinion between *Oakes* on the one hand, and *Carbajal* and *Elliott* on the other hand, it is not at all clear that 20 C.F.R. §§ 404.906(b)(2) and 416.1406(b)(2) actually eliminated the expert-opinion-evidence requirement articulated in SSR 96–6p. Moreover, even if this court were to follow *Oakes,* it is not at all clear that under the circumstances of this case, including the convergence of Stratton's physical and mental impairments, it would be "appropriate," *Oakes,* 400 F.Supp.2d at 777, for the ALJ to make a finding of non-equivalence without the benefit of a medical consultation. *See Galloway,* 2008 WL 8053508, at *5 (describing the "difficult medical judgments" involved in equivalency determinations). Accordingly, on remand, the ALJ would be well advised to give serious consideration to securing expert-opinion evidence on the question of equivalence.

As in *Freeman,* Stratton "might not succeed in proving [her] impairments equal the listing level," 2012 WL 384838, at *6. But, still, given the interrelationship between Stratton's physical and mental impairments, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [Stratton]'s impairments ... in combination equal one of the Commissioner's listings." *Id.* at *5; *see also Caine,* 2010 WL 2102826, at *8 ("The Court declines to determine based on the record whether Caine's mental impairment, alone or in combination with his shoulder impairment, meets or equals a listing. Rather, the Court recommends that this case be remanded with directions to obtain and consider an updated medical opinion regarding whether, based on all the evidence in the record, Caine's severe impairments, alone or in combination, meet or equal a listed impairment."). Similarly, while an ALJ's improper reliance on a SDM opinion can fall into the realm of harmless error, *see Williams,* 2008 WL 4401368, at *5, the interrelationship between Stratton's physical and mental impairments would seem to preclude the court from ruling that the ALJ committed a harmless error when he made a step-

three equivalence determination without adequate expert-opinion evidence to support it.

### c. Stratton's Remaining Arguments

Because this case is being remanded for the reasons described above, there is no need to fully discuss Stratton's remaining arguments. Even so, because the issues Stratton raises are likely to arise on remand, the court addresses them briefly.

Stratton argues that the ALJ erred in assessing her RFC because his RFC assessment is not supported by any medical-source statements or opinions. It appears to be well settled that an RFC assessment by a SDM does not qualify as substantial evidence on which an ALJ may rely when making an RFC assessment. *See, e.g., Miller v. Astrue,* No. 1:10cv1028–WC, 2012 WL 174589, at *3 (Jan. 23, 2012) (citing *Casey v. Astrue,* C.A. No. 07–0878–C, 2008 WL 2509030, at *3 (S.D.Ala. June 19, 2008); *Velasquez,* 2008 WL 791950, at *4; *Bolton v. Astrue,* No. 3:07–cv–612–HTS, 2008 WL 2038513, at *4 (M.D.Fla. May 12, 2008)); *Cunningham,* 2010 WL 4737795, at *4 ("An SDM is not a medical professional of any stripe, and the opinion of an SDM is entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources.") (citation omitted); *Goupil,* 2003 WL 22466164, at *2 n. 3 (D.Me. Oct. 31, 2003); *cf. Ogden v. Astrue,* No. 10–cv–02450–REB, 2012 WL 917287, at *4 (D.Colo. Mar. 19, 2012) (noting impropriety of ALJ's reliance on SDM opinion at step two). Moreover, while the Commissioner argues that the ALJ was entitled to make a common-sense determination of the limitations resulting from Stratton's asthma, the court is not so confident that Stratton's RFC is amenable to a common-sense assessment by a layperson, given the interrelationship between her asthma and her anxiety. Similarly, the court does not share the Commissioner's

confidence that it has the expertise to determine that the ALJ's reliance on the SDM's RFC assessment was a harmless error. *Cf. Freeman,* 2012 WL 384838, at *5. In any event, because the case is being remanded on other grounds, the Commissioner will have the opportunity to obtain a medical opinion on Stratton's RFC.

Finally, Stratton argues that the ALJ did not properly assess the credibility of her statements about her symptoms. Again, there is no need for a full-scale analysis of this issue. However, the court notes that the ALJ's credibility discussion could have been a bit more focused. While the ALJ did touch on several of the *Avery* factors, *see* 797 F.2d at 29, he did not identify the specific statements he was evaluating, *see Weaver v. Astrue,* No. 10–cv–340–SM, 2011 WL 2580766, at *6 (D.N.H. May 25, 2011) ("As a starting point for the following analysis, it is necessary to identify the statement(s) at issue."), nor did he specifically state why he found Stratton's statements not to be credible, *see Guziewicz v. Astrue,* No. 10–cv–310–SM, 2011 WL 128957, at *7 (D.N.H. Jan. 14, 2011); SSR 96-7p, 1996 WL 374186, at *2 (S.S.A.1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."). As with the RFC assessment, the ALJ can address the credibility issue on remand.

### Conclusion

For the reasons given, I recommend that: (1) the Commissioner's motion for an order affirming his decision, document no. 14, be denied; and (2) Stratton's motion to reverse the decision of the commissioner, document no. 12, be granted to the extent

that the case is remanded to the Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice. *See* Fed. R.Civ.P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. *See United States v. De Jesus–Viera,* 655 F.3d 52, 57 (1st Cir.2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 1045, 181 L.Ed.2d 768 (2012); *Sch. Union No. 37 v. United Nat'l Ins. Co.,* 617 F.3d 554, 564 (1st Cir.2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).